NAFTA TRADERS, INC., Petitioner,

v.

Margaret A. QUINN, Respondent.

No. 08–0613.

Supreme Court of Texas.

Argued Oct. 8, 2009.

Decided May 13, 2011.

Alan L. Busch, Busch and Myers, L.L.P., Robert Ruotolo, Busch Ruotolo & Simpson, L.L.P., Jeffrey H. Rasansky, Rasansky Law Firm, Christopher M. Albert, Busch Ruotolo & Simpson, L.L.P., Dallas, for Nafta Traders, Inc.

Janette Johnson, Janette Johnson & Associates, Christine Neill, Dallas, for Margaret A. Quinn.

Roger Townsend, Alexander Dubose & Townsend LLP, Houston, for Amicus Curiae Denver City Energy Associates, L.P.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice JOHNSON, Justice WILLETT, Justice GUZMAN, and Justice LEHRMANN joined.

"The answer to most questions regarding arbitration 'flow inexorably from the fact that arbitration is simply a matter of contract between the parties.'"[1] Nevertheless, the United States Supreme Court has held in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, that the grounds for vacating or modifying an arbitration award under the Federal Arbitration Act (FAA)[2] "are exclusive" and cannot be "supplemented by contract".[3] The principal questions in this case are whether the Texas General Arbitration Act (TAA)[4] likewise precludes an agreement for judicial review of an arbitration award for reversible error, and if not, whether the FAA preempts enforcement of such an agreement. We answer both questions in the negative and

consequently reverse the judgment of the court of appeals[5] and remand the case to that court for further proceedings.

## I

Petitioner, Nafta Traders, Inc., an international re-distributor of athletic apparel and footwear, terminated its employment of respondent, Margaret A. Quinn, its Vice President of Operations, citing as the basis for its decision a reduction in force due to worsening business conditions. Quinn sued Nafta for sex discrimination in violation of the Texas Commission on Human Rights Act.[6] Nafta's employee handbook included a section captioned "Arbitration", which called for "a dispute arising out of [the] employment relationship ... or its termination" to be submitted to binding arbitration. The arbitration section did not indicate whether state or federal law would apply, providing only that "[a]ll proceedings shall be conducted in the City of Dallas, State of Texas."[7] Nafta moved to

---

1. *Perry Homes v. Cull*, 258 S.W.3d 580, 593 (Tex.2008) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

2. 9 U.S.C. §§ 1–16. All references to the FAA are to these provisions.

3. 552 U.S. 576, 578, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

4. Tex. Civ. Prac. & Rem.Code §§ 171.001–.098. All references to the TAA are to these provisions.

5. 257 S.W.3d 795 (Tex.App.-Dallas 2008).

6. Tex. Lab.Code §§ 21.001–.556.

7. The section in full read as follows:

"In the event there is a dispute arising out of your employment relationship with the Company or its termination which the parties are unable to resolve through direct discussion or the Complaint Resolution Procedure that

would involve a litigable claim, regardless of the kind or type of dispute (excluding insured workers' compensation claims [other than wrongful discharge claims], claims for unemployment insurance, administrative claims before the National Labor Relations Board, the Equal Employment Opportunity Commission or any parallel state or local agency), the parties agree to submit such dispute to binding arbitration in lieu of pursuing a trial in a court of law.

"The arbitration will be conducted by the American Arbitration Association or other mutually agreeable arbitration service. The arbitrator will be selected by mutual agreement from a list of five, or through alternative strikes from a second list of five. In all other respects, the arbitration process will be conducted in accordance with the American Arbitration Association Employment Arbitration rules with each party's expenses therefrom to be borne by that party unless otherwise determined by the arbitrator. The arbitrator shall be required to state in a written opinion the facts and conclusions of law relied upon to support the decision rendered. The arbitra-

compel arbitration under the FAA, which applies to "contract[s] evidencing a transaction involving commerce"[8] Quinn did not object, and the district court signed an agreed order.

The parties then selected an AAA arbitrator, who heard evidence and awarded Quinn $30,000 in back pay, $30,000 in mental anguish damages, $29,031 in "special damages",[9] $104,828 in attorney fees, and costs. A verbatim record was made of the proceedings. Quinn moved the court to confirm the award under the TAA. Nafta moved for vacatur under the FAA, the TAA, the common law, and a provision in the arbitration section of the employee handbook that stated: "The arbitrator does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law." Nafta argued in part that by agreeing to these limits on the arbitrator's authority the parties had in effect agreed to expand the narrow scope of judicial review otherwise provided by the TAA and the FAA.

As grounds for vacating the award, Nafta asserted that the arbitrator had applied federal law to Quinn's sex discrimination claim even though she had alleged only a violation of Texas law, and that the evidence did not support a finding of sex discrimination. Regarding damages, Nafta asserted that the attorney fee award was improper, that the "special damages" award was really a double recovery of lost wages, and that the evidence did not support an award of mental anguish damages. Quinn responded that none of the grounds asserted by Nafta is recognized by the TAA or the FAA as a basis for vacating an arbitration award, and that neither the TAA nor the FAA permits the grounds for vacating an arbitration award to be enlarged by agreement. Even if such an agreement were permissible, Quinn argued, the statement in the handbook was too vague and one-sided to be enforced. And finally, she contended, even if the grounds asserted by Nafta could be considered, they should all be rejected as meritless.

The district court issued a brief order simply confirming the arbitrator's award without giving any indication whether it had considered the substance of Nafta's complaints and rejected them or instead had concluded that the TAA or FAA did not permit consideration of such grounds for vacatur. Nafta appealed.[10] After oral argument in the court of appeals but before an opinion had issued, the United States Supreme Court decided *Hall Street Associates, L.L.C. v. Mattel, Inc.*, holding that the FAA's grounds for vacatur and modification "are exclusive" and cannot be

---

tor does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law. All proceedings shall be conducted in the City of Dallas, State of Texas. The duty to arbitrate described above shall survive the termination of the employee's employment with the Company. The provisions of the Employee Handbook constitute a knowing and voluntary waiver of the parties' rights to a jury trial."

**8.** 9 U.S.C. § 2.

**9.** While unemployed, Quinn used $6,000 in personal savings, took out a $5,000 loan on her life insurance policy, withdrew $15,000 from her 401(k) plan, incurring a $1,572 penalty, and paid $1,459 COBRA expenses to maintain her health insurance. These amounts comprised the "special damages".

**10.** Quinn also appealed from the district court's denial of her claim for attorney fees incurred in the confirmation proceeding. The court of appeals affirmed, and Quinn has not petitioned for review.

"supplemented by contract".[11] Although the court of appeals applied the TAA in this case rather than the FAA, noting that neither Nafta nor Quinn had disputed on appeal that the TAA governed their arbitration,[12] it concluded that similarities between the two statutes weighed heavily in favor of construing the TAA as *Hall Street* had construed the FAA.[13] Accordingly, the court held that "parties seeking judicial review of an arbitration award covered under the TAA cannot contractually agree to expand the scope of that review and are instead limited to judicial review based on the statutory grounds enumerated in the statute."[14]

One such statutory ground is section 171.088(a)(3)(A), that an arbitrator has exceeded his power,[15] and Nafta argued that the arbitrator had exceeded his power by issuing an erroneous award when the arbitration agreement denied him the authority to commit reversible error or apply an action or remedy contrary to law.[16] The court of appeals rejected Nafta's argument because, it explained, while an arbitrator exceeds his power by deciding an issue the parties did not agree to submit to him, he does not exceed his power by deciding matters incorrectly.[17] Moreover, the court said, Nafta could not use section 171.088(a)(3)(A) "to accomplish indirectly what we have already concluded it cannot do directly, that is, contractually expand judicial review of the arbitration decision."[18] Having decided that none of Nafta's complaints fell within any of the statutory grounds for vacatur, the court affirmed the district court's judgment.[19]

We granted Nafta's petition for review.[20]

## II

■■■ The TAA, which is based on the Uniform Arbitration Act,[21] lists specific grounds for vacating,[22] modifying, or cor-

11. 552 U.S. 576, 578, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

12. 257 S.W.3d 795, 797 (Tex.App.-Dallas 2008).

13. *Id.* at 798. The parties acknowledged at oral argument in this Court that they have both taken different positions concerning the applicability of the FAA and TAA during this proceeding.

14. *Id.* at 799.

15. Tex. Civ. Prac. & Rem.Code § 171.088(a)(3)(A).

16. 257 S.W.3d at 799.

17. *Id.*

18. *Id.*

19. *Id.* at 799–800.

20. 52 Tex.Sup.Ct.J. 447 (Mar. 27, 2009).

21. *See In re Gulf Exploration, LLC*, 289 S.W.3d 836, 839 (Tex.2009) (noting that "most states (including Texas) have adopted the Uniform Arbitration Act").

22. Tex. Civ. Prac. & Rem.Code § 171.088(a) ("On application of a party, the court shall vacate an award if: (1) the award was obtained by corruption, fraud, or other undue means; (2) the rights of a party were prejudiced by: (A) evident partiality by an arbitrator appointed as a neutral arbitrator; (B) corruption in an arbitrator; or (C) misconduct or wilful misbehavior of an arbitrator; (3) the arbitrators: (A) exceeded their powers; (B) refused to postpone the hearing after a showing of sufficient cause for the postponement; (C) refused to hear evidence material to the controversy; or (D) conducted the hearing, contrary to Section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party; or (4) there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection."); *cf.* Unif. Arbitration Act § 23(a), 7 U.L.A. 77–78 (2000) ("Upon [motion] to the court by a party to an arbitration proceeding,

recting[23] an arbitration award and provides that unless such grounds are offered, "the court, on application of a party, shall confirm the award."[24] One such ground for vacating an arbitration award is that "the arbitrators . . . exceeded their powers".[25] In arbitration conducted by agreement of the parties, the rule is well established that "[a]n arbitrator derives his power from the parties' agreement to submit to arbitration".[26] As the United States Supreme Court has stated:

> the court shall vacate an award made in the arbitration proceeding if: (1) the award was procured by corruption, fraud, or other undue means; (2) there was: (A) evident partiality by an arbitrator appointed as a neutral arbitrator; (B) corruption by an arbitrator; or (C) misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding; (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to Section 15, so as to prejudice substantially the rights of a party to the arbitration proceeding; (4) an arbitrator exceeded the arbitrator's powers; (5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under Section 15(c) not later than the beginning of the arbitration hearing; or (6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in Section 9 so as to prejudice substantially the rights of a party to the arbitration proceeding.").

**23.** Tex. Civ. Prac. & Rem.Code § 171.091(a) ("On application, the court shall modify or correct an award if: (1) the award contains: (A) an evident miscalculation of numbers; or (B) an evident mistake in the description of a person, thing, or property referred to in the award; (2) the arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted; or (3) the form of the award is imperfect in a manner not affecting the merits of the controversy."); *cf.* Unif. Arbitration Act § 24(a), 7 U.L.A. 87–88 (2000) ("Upon [mo-

Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control. This is because an arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.[27]

tion] made within 90 days after the [movant] receives notice of the award pursuant to Section 19 or within 90 days after the [movant] receives notice of a modified or corrected award pursuant to Section 20, the court shall modify or correct the award if: (1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award; (2) the arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or (3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.").

**24.** Tex. Civ. Prac. & Rem.Code § 171.087; *cf.* Unif. Arbitration Act § 22, 7 U.L.A. 76 (2000) ("After a party to an arbitration proceeding receives notice of an award, the party may make a [motion] to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to Section 20 or 24 or is vacated pursuant to Section 23.").

**25.** Tex. Civ. Prac. & Rem.Code § 171.088(a)(3)(A).

**26.** *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex.2009) (citing *Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959) ("the authority of arbitrators is derived from the arbitration agreement")).

**27.** *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, —— U.S. ——, 130 S.Ct. 1758, 1773–1774, 176 L.Ed.2d 605 (2010) (citations and internal quotation marks omitted).

Nafta and Quinn agreed that an arbitrator appointed to resolve disputes between them "does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law." Unless there is some reason to exclude such limitations from the general rule that the parties' agreement determines arbitral authority, Nafta's contention that the arbitrator exceeded his authority raises a ground to vacate the award, and the court of appeals erred in holding to the contrary.

Quinn argues that her agreement to limit the arbitrator's authority is in effect an agreement for broader judicial review of the arbitration award than permitted by the TAA for the same reasons it is not permitted under similar provisions of the FAA, as the United States Supreme Court held in *Hall Street.* Sections 10 and 11 of the FAA specify grounds for vacating,[28] modifying, or correcting[29] an arbitration award that are similar to the TAA's, and like the TAA, section 9 of the FAA mandates confirmation absent such grounds.[30] In *Hall Street,* the parties had tried part of their dispute to the federal district court and then agreed to submit another part to arbitration.[31] They agreed that the court could "enter judgment upon any award" unless "the arbitrator's findings of facts are not supported by substantial evidence, or ... the arbitrator's conclusions of law are erroneous."[32] The Supreme Court held that this agreement impermissibly enlarged the grounds for vacating or modifying an arbitration award under the FAA.[33]

We must, of course, follow *Hall Street* in applying the FAA, but in construing the TAA, we are obliged to examine *Hall*

28. 9 U.S.C. § 10(a) ("In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration— (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.").

29. *Id.* § 11 ("In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award. (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. (c) Where the award is imperfect in matter of form not affecting the merits of the controversy. The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.").

30. *Id.* § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.").

31. *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 579, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

32. *Id.*

33. *Id.* at 592, 128 S.Ct. 1396.

*Street*'s reasoning and reach our own judgment. The Supreme Court based its decision on the framework of the FAA and on policy. It found that "textual features" of sections 9, 10, and 11 were "at odds with enforcing a contract to expand judicial review following the arbitration." [34] Because the grounds listed in sections 10 and 11 all "address egregious departures from the parties' agreed-upon arbitration" and "extreme arbitral conduct", the FAA did not, the Court reasoned, "authorize contracting parties to supplement review for specific instances of outrageous conduct with review for just any legal error." [35] Further, the Court observed, section 9 "carries no hint of flexibility"; it "unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies", and does not merely "tell a court what to do just in case the parties say nothing else." [36] This construction, the Court added, was consistent with policy favoring limited judicial review:

> Instead of fighting the text, it makes more sense to see the three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, and bring arbitration theory to grief in post-arbitration process.[37]

We agree with Quinn that while the Supreme Court and the parties in *Hall Street* framed the issue as "expandable judicial review authority",[38] the flip-side is limited arbitral decision-making authority, the aim of Quinn and Nafta's agreement. Though the parties in *Hall Street* did not couch their agreement in terms of limiting the arbitrator's authority to issue a decision unsupported by the law and the evidence, that was certainly the practical effect of what they expressly agreed to—that the court could not "enter judgment" on such a decision. The parties in *Hall Street* attempted to accomplish indirectly the same end that Quinn and Nafta sought directly—a limit on the arbitrator's authority.

Yet the Supreme Court, in holding that under the FAA the grounds for vacating, modifying, or correcting an arbitration award cannot be expanded beyond those listed in sections 10 and 11, did not discuss section 10(a)(4), which like section 171.088(a)(3)(A) of the TAA, provides for vacatur "where the arbitrators exceeded their powers".[39] The omission appears to us to undercut the Supreme Court's textual analysis. When parties have agreed that an arbitrator should not have authority to reach a decision based on reversible error—in other words, that an arbitrator should have no more power than a judge—a motion to vacate for such error as exceeding the arbitrator's authority is firmly

---

**34.** *Id.* at 586, 128 S.Ct. 1396.

**35.** *Id.*

**36.** *Id.* at 587, 128 S.Ct. 1396.

**37.** *Hall St.*, 552 U.S. at 588, 128 S.Ct. 1396 (citations, internal quotation marks, and brackets omitted).

**38.** *Id.* at 584, 128 S.Ct. 1396.

**39.** 9 U.S.C. § 10(a)(4). The only mention of section 10(a)(4) in *Hall Street* is the observation that "some courts have thought[ ] 'manifest disregard' may have been shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.' " *Hall St.*, 552 U.S. at 585, 128 S.Ct. 1396.

grounded in the text of section 10. The Supreme Court's reasoning that an arbitrator's merely legal errors are not the kind of "egregious departures from the parties' agreed-upon arbitration" section 10 addresses loses force when such errors directly contradict the parties' express agreement and deprive them of the benefit of their reasonable expectations.

■ When parties have agreed to limit an arbitrator's power to that of a judge, whose decisions are reviewable on appeal, and the complaint is that the arbitrator's decision exceeds his powers, a statutory ground for vacatur, the only way to maintain a textual argument for limited judicial review is to hold that such an agreement is not encompassed by the statutory provision and unenforceable. In other words, the textual argument entails that arbitrators can never, by committing reversible error, "exceed their powers" within the meaning of section 10(a)(4), regardless of the parties' agreement. But the FAA itself imposes no such limitation on parties' right of contract.[40] On the contrary, as the Supreme Court noted, "the FAA lets parties tailor some, even many features of arbitration by contract, including the way arbitrators are chosen, what their qualifications should be, which issues are arbitrable, along with procedure and choice of substantive law."[41] Furthermore, the Court recognized a "general policy of treating arbitration agreements as en-

forceable".[42] The Court regarded this general policy as "beg[ging] the question ... whether the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration",[43] but one such "textual feature[ ]" is section 10(a)(4), which requires vacatur when arbitrators exceed their authority. Whether that feature is at odds with expanded judicial review depends on whether the right to contract to circumscribe arbitral authority includes limiting the authority to err in decision-making.

The Supreme Court's textual analysis, when taking account of the complete statutory text, circles back to the question whether parties can agree to limit an arbitrator's power to err. If not, then section 10(a)(4) is consistent with the Court's analysis, but if so, the analysis would appear to be flawed. It is the statutory text that begs the policy question, not policy that begs the statutory construction issue.

The Supreme Court stated that it "makes ... sense" for there to be "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."[44] One difficulty with this statement of national policy is that the Court had previously identified the enforcement of private agreements as the FAA's "overriding goal", writing:

**40.** The Supreme Court has never addressed section 10(a)(4), except to say, since *Hall Street*, that "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable", and that "[i]n that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Stolt–Nielsen S.A. v. Animal-*

*Feeds Int'l Corp.*, —— U.S. ——, 130 S.Ct. 1758, 1767, 176 L.Ed.2d 605 (2010) (citations and internal quotation marks omitted). *Stolt–Nielsen* did not involve an arbitration agreement for expanded judicial review.

**41.** *Hall St.*, 552 U.S. at 586, 128 S.Ct. 1396.

**42.** *Id.*

**43.** *Id.*

**44.** *Id.* at 588, 128 S.Ct. 1396.

The legislative history of the [FAA] establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements.[45]

*Hall Street* dismissed these words as taken out of context, explaining that all the Court had said was that arbitration should be expedited, in accordance with the parties' agreement, despite pending litigation, even if proceeding in different forums is not the most efficient course for resolving the disputes.[46] But the Court has since reaffirmed that "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms'",[47] so *Hall Street* cannot fairly be read to replace the FAA's "principal purpose" of enforcing arbitration agreements with arbitration's "essential virtue" of expedition in determining what

policy should guide its textual interpretation.[48] Parties agree to arbitration for reasons other than speed and cost, such as flexibility, privacy, and in some instances, expertise.[49] In some cases, at least, whether arbitration reduces cost and delay at all is fiercely debated. In any event, it would hardly make sense to force more expedition on parties than they want. If we were to identify an essential virtue of arbitration, it would be that it is a creature of agreement.

But assuming that the ultimate goal of arbitration is haste, the abiding difficulty with a policy against expanded judicial review, and correspondingly, limited arbitral authority, is that the Court could not itself say whether the policy was a good one:

Hall Street and its *amici* say parties will flee from arbitration if expanded review is not open to them. One of Mattel's *amici* foresees flight from the courts if it is. We do not know who, if anyone, is right, and so cannot say whether the exclusivity reading of the statute is more of a threat to the popularity of arbitrators or to that of courts. But whatever the consequences of our holding, the

**45.** *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

**46.** 552 U.S. at 588, 128 S.Ct. 1396 ("Despite the [*Dean Witter*] opinion's language 'reject[ing]' the suggestion that the overriding goal of the [FAA] was to promote the expeditious resolution of claims,' the holding mandated immediate enforcement of an arbitration agreement; the Court was merely trying to explain that the inefficiency and difficulty of conducting simultaneous arbitration and federal-court litigation was not a good enough reason to defer the arbitration." (citations and internal quotation marks omitted)).

**47.** *AT&T Mobility LLC v. Concepcion,* 563 U.S. ——, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011) (*available at* http://www. supremecourt.gov/opinions/10pdf/09–893.pdf)

(quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), and citing *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* —— U.S. ——, 130 S.Ct. 1758, 1763, 176 L.Ed.2d 605 (2010)).

**48.** *Id.* at 1749 ("'We ... are not persuaded by the argument that the conflict between two goals of the Arbitration Act—enforcement of private agreements and encouragement of efficient and speedy dispute resolution—must be resolved in favor of the latter in order to realize the intent of the drafters.'" (quoting *Dean Witter,* 470 U.S. at 221, 105 S.Ct. 1238)).

**49.** *See, e.g.,* Peter F. Gazda, Comment, *Arbitration: Making Court–Annexed Arbitration an Attractive Alternative in Texas,* 16 St. Mary's L.J. 409, 426 (1985).

statutory text gives us no business to expand the statutory grounds.[50]

A national policy favoring limited judicial review that turns out to be inimical to arbitration could hardly reside comfortably alongside the "national policy favoring arbitration" that the Supreme Court has held Congress declared in the FAA.[51] But without denying that possibility, the Court concluded that the statutory text leaves no alternative.

Thus, the search for a policy to justify limited judicial review winds back around to the statutory text, which, as we have already seen, is what commissioned the expedition in the first place. The problem comes down to this. Under the TAA (and the FAA), an arbitration award must be vacated if the arbitrator exceeds his powers. Generally, an arbitrator's powers are determined by agreement of the parties. Can the parties agree that an arbitrator has no more power than a judge, so that his decision is subject to review, the same as a judicial decision? *Hall Street* answers no, based on an analysis of the FAA's text that ignores the provision that raises the problem, and a policy that may be at odds with the national policy favoring arbitration. With great respect, we are unable to conclude that *Hall Street*'s analysis of the FAA provides a persuasive basis for construing the TAA the same way.

The Supreme Court expressed concern that "a more cumbersome and time-consuming judicial review process [would] bring arbitration theory to grief in post-arbitration process",[52] and we agree that delay and resulting expense are concerns that arbitration is intended, at least, to alleviate.[53] But equally grievous is a post-arbitration process that refuses to correct errors as the parties intended, and of equal concern is a civil justice system that allows parties an alternative to litigation only if they are willing to risk an unreviewable decision. The California Supreme Court, declining to follow *Hall Street* in construing its own state's statute, offered this assessment:

> The judicial system reaps little benefit from forcing parties to choose between the risk of an erroneous arbitration award and the burden of litigating their dispute entirely in court.... There are also significant benefits to the development of the common law when arbitration awards are made subject to merits review by the parties' agreement.... These advantages, obtained with the consent of the parties, are substantial.[54]

■ As a fundamental matter, Texas law recognizes and protects a broad freedom of contract. We have repeatedly said that

> if there is one thing which more than another public policy requires it is that

---

**50.** *Hall St.,* 552 U.S. at 588–589, 128 S.Ct. 1396 (citations omitted).

**51.** *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

**52.** *Hall St.,* 552 U.S. at 588, 128 S.Ct. 1396 (citations and internal quotation marks omitted).

**53.** *CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 238 (Tex.2002) ("Subjecting arbitration awards to judicial review adds expense and delay, thereby diminishing the benefits of ar-

bitration as an efficient, economical system for resolving disputes. Accordingly, we have long held that 'an award of arbitrators upon matters submitted to them is given the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it.'" (quoting *City of San Antonio v. McKenzie Constr. Co.,* 136 Tex. 315, 150 S.W.2d 989, 996 (1941))).

**54.** *Cable Connection, Inc. v. DIRECTV, Inc.,* 44 Cal.4th 1334, 82 Cal.Rptr.3d 229, 190 P.3d 586, 606 (2008).

men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice.[55]

We find nothing in the TAA at odds with this policy.[56] On the contrary, the purpose of the TAA is to facilitate arbitration agreements, which have been enforceable in Texas by Constitution or statute since at least 1845.[57] Specifically, the TAA contains no policy against parties' agreeing to limit the authority of an arbitrator to that of a judge, but rather, an express provision requiring vacatur when "arbitrators [have] exceeded their powers".[58]

Quinn argues that an agreement like the one in this case is one-sided, but we fail to see how. Had the arbitration award gone against her and against the law and evidence, the agreement would have been to her benefit. We have said that an arbitration agreement may be so one-sided as to be unconscionable,[59] but the benefits or burdens of judicial review for reversible error fall to each side alike.

■ The Supreme Court in *Hall Street* squarely rejected the argument that an agreement to expand the statutory grounds for judicial review of an arbitration award is an invalid attempt to confer jurisdiction on a court by contract:

> Because the FAA is not jurisdictional, there is no merit in the argument that enforcing the arbitration agreement's judicial review provision would create fed-

---

**55.** *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex.2008) (construing insurance policy coverage of punitive damages) (quoting *Wood Motor Co. v. Nebel*, 150 Tex. 86, 238 S.W.2d 181, 185 (1951) (construing contract termination clause) (quoting *Printing & Numerical Registering Co. v. Sampson*, 19 L.R. Eq. 462, 465, 1874 WL 16322 (1875))); *see also Gym–N–I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex.2007) (construing commercial lease expressly waiving warranties) (quoting *Wood*); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex.2005) (construing liquidated damages clause) (quoting *Wood* and *Sampson*); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 n. 11 (Tex.2004) (construing contractual jury waiver) (quoting *Wood* and *Sampson*); *Mo., Kan. & Tex. Ry. Co. of Tex. v. Carter*, 95 Tex. 461, 68 S.W. 159, 164 (1902) (construing contract waiving responsibility for fires caused by railroad engines) (quoting *Sampson*).

**56.** *See Fairfield*, 246 S.W.3d at 655; *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 628 (Tex.2004) ("Generally, 'the State's public policy is reflected in its statutes.'" (quoting *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex.2002))); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex.2000).

**57.** *In re AIU Ins. Co.*, 148 S.W.3d 109, 122 (Tex.2004) (Phillips, C.J., dissenting) ("The right to arbitration has been guaranteed in every Texas constitution." (citing TEX. CONST. art. XVI, § 13 (repealed 1969); TEX. CONST. of 1869, art. XII, § 11; TEX. CONST. of 1866, art. VII, § 15; TEX. CONST. of 1861, art. VII, § 15; TEX. CONST. of 1845, art. VII, § 15)); *id.* at 122 n. 1 ("Each constitution provided that it is 'the duty of the Legislature to pass such laws as may be necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial.' TEX. CONST. 1876, art. XVI, § 13 (repealed 1969). This section was repealed by the voters in 1969 as one of the 'obsolete, superfluous and unnecessary sections of the Constitution.' Tex. H.J.R. No.3, 61st Leg., R.S., 1969 Tex. Gen. Laws 3230. The House Joint Resolution stated that the repealer was not intended to 'make any substantive changes in our present constitution.' *Id.*").

**58.** TEX. CIV. PRAC. & REM.CODE § 171.088(a)(3)(A).

**59.** *In re Poly–America, L.P.*, 262 S.W.3d 337, 348 (Tex.2008) ("Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided.").

eral jurisdiction by private contract.[60] The TAA, also, is not jurisdictional, and the argument has no more merit with respect to Texas courts' jurisdiction. Nothing more need be said on the subject.

We are mindful of the TAA's mandate that it "be construed to . . . make uniform the construction of other states' law applicable to an arbitration." [61] But the states are already divided over whether their own statutes permit agreements for expanded judicial review of arbitration awards: three say yes,[62] five say no.[63] In

construing the TAA, we are obliged to be faithful to its text.

Accordingly, we hold that the TAA presents no impediment to an agreement that limits the authority of an arbitrator in deciding a matter and thus allows for judicial review of an arbitration award for reversible error.

### III

 When, as in this case, an arbitration agreement is covered by both state and federal law,[64] state law is preempted

---

**60.** 552 U.S. 576, 582 n. 2, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

**61.** TEX. CIV. PRAC. & REM.CODE § 171.003.

**62.** *See Raymond James Fin. Servs., Inc. v. Honea*, 55 So.3d 1161, 1170 (Ala.2010); *Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 82 Cal.Rptr.3d 229, 190 P.3d 586, 606 (2008); *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.*, 135 N.J. 349, 640 A.2d 788, 793 (1994); *see also HH East Parcel, LLC v. Handy & Harman, Inc.*, 287 Conn. 189, 947 A.2d 916, 926 n. 16 (2008).

**63.** *See Brookfield Country Club, Inc. v. St. James–Brookfield, LLC*, 287 Ga. 408, 696 S.E.2d 663, 667 (2010); *HL 1, LLC v. Riverwalk, LLC*, 15 A.3d 725, 736 (Me.2011); *John T. Jones Constr. Co. v. City of Grand Forks*, 665 N.W.2d 698, 704 (N.D.2003); *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 261 (Tenn.2010); *Barnett v. Hicks*, 119 Wash.2d 151, 829 P.2d 1087, 1095 (1992); *see also Dick v. Dick*, 210 Mich.App. 576, 534 N.W.2d 185, 190–191 (1995); *Trombetta v. Raymond James Fin. Servs., Inc.*, 907 A.2d 550, 576 (Pa.Super.Ct.2006).

**64.** The FAA applies to maritime transactions and transactions involving commerce, 9 U.S.C. § 2, defined as follows: " 'Maritime transactions', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; 'commerce', as herein defined, means commerce among the several States or with for-

eign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

Quinn argued in the court of appeals that her agreement with Nafta did not involve interstate commerce, but she has abandoned that argument in this Court, and in any event, there is no serious argument that her agreement as Vice President of Operations of a business with national and international sales did not involve interstate commerce.

The TAA applies to written arbitration agreements, TEX. CIV. PRAC. & REM.CODE § 171.001, except as follows:

"(a) This chapter does not apply to:

(1) a collective bargaining agreement between an employer and a labor union;

(2) an agreement for the acquisition by one or more individuals of property, services, money, or credit in which the total consideration to be furnished by the individual is not more than $50,000, except as provided by Subsection (b);

(3) a claim for personal injury, except as provided by Subsection (c);

(4) a claim for workers' compensation benefits; or

(5) an agreement made before January 1, 1966.

"(b) An agreement described by Subsection (a)(2) is subject to this chapter if:

"to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " [65] Having concluded that the TAA permits parties to agree to expanded judicial review of arbitration awards, we must determine whether the FAA, which under *Hall Street* precludes such agreements, preempts Texas law. That is, do such agreements thwart Congress's purposes and objectives in the FAA?

 In *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, the Supreme Court explained the FAA's preemptive effect as follows:

The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts. While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered. Accordingly, we have recognized that the FAA does not require parties to arbitrate when

 (1) the parties to the agreement agree in writing to arbitrate; and
 (2) the agreement is signed by each party and each party's attorney.
"(c) A claim described by Subsection (a)(3) is subject to this chapter if:
 (1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and
 (2) the agreement is signed by each party and each party's attorney."
*Id.* § 171.002.

As the court of appeals noted, the parties have not disputed the applicability of the TAA to their agreement.

The TAA and the FAA may both be applicable to an agreement, absent the parties' choice of one or the other. *In re L & L*

they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.[66]

FAA-preemption is thus aimed at state-law hindrances to enforcement of arbitration agreements not applicable to contracts generally. We have explained it this way:

The FAA only preempts the TAA if: (1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses under state law, and (4) state law affects the enforceability of the agreement.... The mere fact that a contract affects interstate commerce, thus triggering the FAA, does not preclude enforcement under the TAA as well. For the FAA to preempt the TAA, state law must refuse to enforce an arbitration agreement that the FAA would enforce, either because (1) the TAA has expressly exempted the agreement from coverage, or (2) the TAA has imposed an enforceability requirement not found in the FAA.[67]

*Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127–128 (Tex.1999) (per curiam).

65. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

66. *Id.* at 478, 109 S.Ct. 1248 (citations, punctuation, and internal quotation marks omitted).

67. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex.2006) (citations, brackets, emphasis, and internal quotation marks omitted).

In *Volt*, the parties chose California law to govern their arbitration agreement.[68] When a dispute arose between them, one demanded arbitration while the other filed suit, joining two strangers to the agreement as defendants. The state trial court stayed the arbitration pursuant to a provision of the California Arbitration Act that authorized a court "to stay arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it, where 'there is a possibility of conflicting rulings on a common issue of law or fact.'"[69] Though the FAA contains no similar provision, the Supreme Court held that the FAA did not preempt state law:

> In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA pre-empts state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA.[70]

█ State law was not preempted, even though it operated to stay arbitration that would have gone forward under federal law. The parties' agreement was enforced, not thwarted, by application of the California law they had chosen. The Supreme Court concluded that the FAA's purposes and objectives are not defeated by conducting arbitration under state-law procedures different from those provided by the federal statute. Indeed, as *Volt* acknowledged, it is not clear to what extent the FAA's procedures, prescribed expressly for federal courts, ever apply in state courts.[71] Section 10 of the FAA, the

---

68. *Volt*, 489 U.S. at 470, 109 S.Ct. 1248.

69. *Id.* at 471, 109 S.Ct. 1248 (quoting CAL.CIV. PROC.CODE § 1281.2(c)(3) (West 1982)).

70. *Id.* at 478–479, 109 S.Ct. 1248 (citations and internal quotation marks omitted).

71. *Id.* at 477 n. 6, 109 S.Ct. 1248 ("While we have held that the FAA's 'substantive' provisions—§§ 1 and 2—are applicable in state as well as federal court, see *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court, see 9 U.S.C. § 3 (referring to proceedings 'brought in any of the courts of the United States'); § 4 (referring to 'any United States district court'), are nonetheless applicable in state court. See *Southland Corp. v. Keating*, *supra*, at 16, n. 10, 104 S.Ct. 852 (expressly reserving the question whether '§§ 3 and 4 of the Arbitration Act apply to proceedings in state courts'); see also *id.*, at 29, 104 S.Ct. 852 (O'CONNOR, J., dissenting) (§§ 3 and 4 of the FAA apply only in federal court)."); *see*

basis of the decision in *Hall Street*, is itself addressed only to "the United States court in and for the district wherein the award was made".[72] The lesson of *Volt* is that the FAA does not preempt all state-law impediments to arbitration; it preempts state-law impediments to arbitration agreements.

■ The opinion in *Hall Street*, as we have discussed, seems at one point to promote expedition as the primary goal of the FAA. But if expedition is the touchstone for FAA-preemption, then *Volt* was incorrectly decided, since it upheld the use of state law to delay arbitration. Though *Hall Street*'s majority did not cite *Volt*, the Court has since relied on it.[73] With *Volt* intact, we cannot read *Hall Street*'s discussion of the importance of expedition to displace as the principal basis for preemption the protection of parties' agreements.[74] More importantly, *Hall Street* expressly contemplates that the FAA will not preempt state law that allows agreements to enlarge judicial review of arbitration awards:

> In holding that [FAA] §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards.[75]

Dissenting from the Court's construction of the FAA, Justice Breyer emphasized

also Vaden v. Discover Bank, —— U.S. ——, 129 S.Ct. 1262, 1279 n. 20, 173 L.Ed.2d 206 (2009) (stating that "[t]his Court has not decided whether §§ 3 and 4 apply to proceedings in state courts," citing *Volt*); *Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 82 Cal.Rptr.3d 229, 190 P.3d 586, 597 n. 12 (2008) (stating that the FAA's procedural provisions do not apply in state court proceedings). We need not resolve the issue here.

72. 9 U.S.C. § 10.

73. *AT&T Mobility LLC v. Concepcion*, 563 U.S. ——, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011) (*available at* http://www.supremecourt.gov/opinions/10pdf/09–893.pdf) (quoting *Volt*); *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, —— U.S. ——, 130 S.Ct. 1758, 1773–1774, 176 L.Ed.2d 605 (2010) ("While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion.... [W]e have said on numerous occasions that the central or primary purpose of

the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.... Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties.... [W]e have held that parties are generally free to structure their arbitration agreements as they see fit ... and may agree on rules under which any arbitration will proceed." (citing *Volt*, 489 U.S. at 479, 109 S.Ct. 1248) (citations and internal quotation marks omitted)).

74. A state law that both denies enforcement of the parties' agreement and defeats arbitration's goal of expedition is, not surprisingly, preempted. *Concepcion*, 131 S.Ct. 1740 (holding that the California rule, regarding the unconscionability of class arbitration waivers in consumer contracts, from *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), is preempted by the FAA).

75. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

that the Court was in agreement that its decision would not have preclusive effect. Citing the passage of the Court's opinion we have just quoted, and a part of Justice Stevens' dissenting opinion, he stressed:

> The question presented in this case is whether "the Federal Arbitration Act ... *precludes* a federal court from enforcing" an arbitration agreement that gives the court the power to set aside an arbitration award that embodies an arbitrator's mistake about the law. Like the majority and Justice STEVENS, and primarily for the reasons they set forth, I believe that the Act does not *preclude* enforcement of such an agreement.[76]

These passages, we think, refute any argument that *Volt*'s reasoning applies only to the procedure by which arbitration is conducted, not the procedure by which awards are reviewed. The only reasonable reading of the opinions in *Hall Street*, in our view, is that the FAA does not preempt state law that allows parties to agree to a greater review of arbitration awards.[77]

 It was not necessary for Quinn and Nafta to choose the TAA to govern their agreement, nor would that choice alone have provided them expanded judicial review of an arbitration award. The TAA, as we have construed it, permits parties to agree to expanded review, or to a corresponding limit on the arbitrator's authority, as in this case, but it does not impose such review on every arbitration agreement. Nor was it necessary for Quinn and Nafta to choose not to be governed by the FAA, since even if it applies, as it does in this case, it does not preempt the parties' agreement for expanded judicial review. The matter is left to the agreement of the parties. But absent clear agreement, the default under the TAA, and the only course permitted by the FAA, is restricted judicial review.[78]

For these reasons, we hold that the FAA does not preempt enforcement of an agreement for expanded judicial review of an arbitration award enforceable under the TAA.

## IV

 An arbitration award is not susceptible to full judicial review merely because the parties have agreed. A court[79] must have a sufficient record of the arbitral proceedings, and complaints must have been preserved, all as if the award were a court judgment on appeal.[80] For efficiency's sake, arbitration proceedings are often informal; procedural rules are relaxed, rules of evidence are not followed, and no record is made. These aspects of arbitration, which are key to reducing costs and delay in resolving disputes, must fall casualty to the requirements for full judicial review. The parties can decide for themselves whether the benefits are worth the addi-

---

**76.** *Id.* at 596, 128 S.Ct. 1396 (Breyer, J., dissenting) (emphasis added) (citation omitted).

**77.** *See Cable Connection, Inc. v. DIRECTV, Inc.,* 44 Cal.4th 1334, 82 Cal.Rptr.3d 229, 190 P.3d 586, 595–599 (2008).

**78.** *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (holding that an agreement that did not unambiguously limit the scope of arbitration by choosing a state-law rule did not effectively do so under the FAA).

**79.** In ruling on motions to confirm, alter, or vacate an arbitration award, a trial court reviewing the award for reversible error serves an appellate function.

**80.** In appeals from judicial proceedings, the requirements for preserving complaints and for the record are set out, respectively, in Rules 33 and 34 of the Texas Rules of Appellate Procedure. Although these rules are not written for appeals from arbitration awards, their principles should govern such appeals.

tional cost and delay, but the only review to which they can agree is the kind of review courts conduct. If error cannot be demonstrated, an award must be presumed correct.[81]

■ By the same token, arbitration parties cannot agree to a different standard of judicial review than the court would employ in a judicial proceeding involving the same subject matter. "[A]n arbitration agreement providing that a 'judge would review the award by flipping a coin or studying the entrails of a dead fowl' would be unenforceable." [82]

Here, the parties have submitted a record of the arbitration proceeding, including a transcript of the evidence offered. Nafta has attacked the award on several legal grounds and challenged the sufficiency of the evidence. On remand, the court must determine whether the record is sufficient to review Nafta's complaints.

## V

In the trial court, Nafta invoked the provision of its agreement with Quinn limiting the arbitrator's authority "to render a decision which contains a reversible error of state or federal law, or ... to apply a cause of action or remedy not expressly provided for under existing state or federal law", and raised its arguments under this provision for vacating the award. Since the trial court's order confirming the award gives no basis for its decision, we must presume that the court rejected Nafta's arguments in substance. Nafta raised the same arguments in the court of ap-

peals, but the court did not reach them, concluding instead that even if meritorious, they were not grounds for vacatur. Because we disagree, the judgment of the court of appeals must be reversed and the case remanded to that court for consideration of the merits of Nafta's challenges to the arbitration award.

*It is so ordered.*

Chief Justice JEFFERSON filed a concurring opinion, in which Justice WAINWRIGHT and Justice LEHRMANN joined.

Chief Justice JEFFERSON, joined by Justice WAINWRIGHT and Justice LEHRMANN, concurring.

Increasingly, our civil disputes are submitted to the private sector rather than a judge or jury. The trend is neither intrinsically good nor bad, but there are consequences. When a case is tried in open court, rules of evidence inherited from Britain and modified by American courts dictate what facts a jury may properly consider. The proceeding is recorded, and dispositive rulings are subject to principles of error preservation. When the facts are established and the law applied, the State of Texas enforces the trial court's judgment. Journalists report the facts, editorial writers critique the judgment, citizens reflect on the state of our laws, and legislators file bills to alter future outcomes. When the parties appeal, the resulting precedent gives predictability to the activities and transactions in which people and corporations engage.

---

**81.** *See also Cable Connection,* 82 Cal.Rptr.3d 229, 190 P.3d at 605 ("Some courts have expressed concern that arbitration is so different from judicial proceedings that courts would be unable to adequately review the substance of arbitrators' decisions.... Problems with the record are not reflected in the cases, but in the event they arise, there is a

ready solution in the familiar rule that the decision under review is presumed correct on matters where the record is silent.").

**82.** *Id.* (citations omitted) (quoting *LaPine Tech. Corp. v. Kyocera Corp.,* 130 F.3d 884, 891 (9th Cir.1997) (Kozinski, J., concurring)).

An arbitration is different.[1] It is said to be speedier, often less costly, and overseen by experts in the relevant subject matter. But it is conducted in private.[2] The rules of evidence do not apply. There may be no official transcript of the proceedings. The award is usually final, even when an identical judgment appealed to a state court would be reversed on procedural or substantive grounds. Courts are generally required to confirm an arbitral award because trial judges have little power to reverse it for factual insufficiency or, with certain exceptions, to prevent a miscarriage of justice.[3]

This case asks whether parties can agree to "try" a case privately, but then enlist state courts to review the decision for reversible errors of state or federal law. I agree with the Court that the agreement is enforceable under the TAA, *Hall Street* notwithstanding. 339 S.W.3d at 101. I write only to observe that our system is failing if parties are compelled to arbitrate because they believe our courts do not adequately serve their needs. If litigation is leaving because lawsuits are too expensive, the bench and the bar must rethink the crippling burdens oppressive discovery imposes. If courts have yet to embrace modern case-management practices, the Legislature should ensure that the justice system has resources to improve technology and to hire qualified personnel—two sure ways to improve efficiency.

And it is unlikely, given a choice, that parties to an arbitration would choose, as their arbitrator, a person whose only qualification is the possession of a law license, and who need not have significant experience as an advocate or as a judge.[4] They seek instead a pool of qualified professionals rather than individuals who are swept in and out of office based not on considerations of merit, but on the vagaries of partisan election. *See* TEX. CONST. art. V (outlining the requirements for judicial election). The solution to that quandary is beyond the scope of this case, but the parties' contractual agreement for reviewing the arbitrator's decision demonstrates that people know how to avoid this perceived deficiency. They will, increasingly, select their own specialized tribunal and seek to retain a contractual right to meaningful appellate review in our state courts. As the Court does, I would affirm that right. Nevertheless, we must, in the fu-

1. *See Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co., Inc.*, 22 F.3d 1010, 1011 (10th Cir. 1994) ("Arbitration provides neither the procedural protections nor the assurance of the proper application of substantive law offered by the judicial system.").

2. *See* Gu Weixia, Note & Comment, *Confidentiality Revisited: Blessing or Curse in International Arbitration?*, 15 AM. REV. INT'L ARB. 607, 622 (2004) ("How disputes are actually decided concerns not only the parties to the arbitration, but may also have substantial effects on the world at large, including shareholders, administrative regulators, consumers, and the like. Decisions affecting them should be subject to public scrutiny." (footnote omitted)).

3. *See* 9 U.S.C. § 9 ("[A]ny party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]."); TEX. CIV. PRAC. & REM.CODE § 171.087 ("Unless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091 [of the TAA], the court, on application of a party, shall confirm the award.").

4. *See* TEX. CONST. art. V, § 7 ("Each district judge shall be elected by the qualified voters at a General Election and shall be a citizen of the United States and of this State, who is licensed to practice law in this State and has been a practicing lawyer or a Judge of a Court in this State, or both combined, for four (4) years next preceding his election....").

·ture, address those aspects of our justice system that compel litigants to circumvent the courts and opt for private adjudication.