

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00498-CV

**MWM HELOTES RANCH, LTD.** and Myfe Moore,
Appellants

v.

John H. **WHITE**, Jr., Individually, John H. White, III, Individually, John H. White, Jr., John H. White, III and Molly C. White, in their capacities as Co-Trustees of the 1983 John H. White Long-Term Trust F/B/O John H. White, Jr. and of the 1976B Partnership Trust; TCW Helotes Ranch Ltd, and Tuleta C. White,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI11563
Honorable David A. Canales, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: April 8, 2020

AFFIRMED

    Appellants MWM Helotes Ranch, Ltd. and Myfe Moore (collectively, "Moore") appeal

the denial of their motion to vacate an arbitration award against them on the sole ground[1] that the

---

[1] After the appellants' brief and the appellees' briefs were filed, a new appellate attorney entered the appeal on Moore's behalf.  In two orders dated April 1, 2019 and May 3, 2019, this court denied Moore leave to raise new appellate issues in an amended brief or reply brief asserting the arbitrator exceeded the scope of her authority and was biased against Moore.

arbitrator abused her discretion by failing to grant a postponement of the arbitration hearing. We overrule Moore's issue and affirm the trial court's judgment.

## BACKGROUND

The underlying arbitration arises out of the settlement of a lawsuit originally filed by John H. White, Jr. in 2005 seeking to partition the land that he and his two sisters Myfe Moore and Tuleta White, and their respective trusts or limited partnership entities, inherited from their father. After three years of litigation, the parties[2] entered into a settlement agreement in 2008 that partitioned the land and established an appraisal process to determine any owelty payments due between the siblings based on the value of their parcels (the "Settlement Agreement"). The Settlement Agreement included a provision for binding arbitration before Sue M. Hall (the "Arbitrator") of any dispute regarding "enforcement or violation" and "interpretation, enforcement and/or performance" of the agreement.

Disagreements subsequently arose concerning the appraisal process and a dam on Moore's property in need of remediation. John White filed a petition initiating arbitration in 2009 requesting the Arbitrator to interpret and enforce the appraisal provision of the Settlement Agreement. The parties agreed to a set of arbitration rules, later supplemented by an addendum (collectively, the "Arbitration Rules"), intended to govern the arbitration proceedings. With respect to postponements, Rule 2(d) of the Arbitration Rules states in relevant part:

> *Continuances.* Except by stipulation of the parties or for good cause shown, no continuances or postponements of the date initially set for hearing shall be granted by the arbitrator. If one of the parties fails to appear for the hearing(s), the arbitrator may proceed to determine the controversy . . . .

---

[2] As used in this opinion, "John White" collectively refers to John H. White, Jr., individually, John H. White, III, individually, and John H. White, Jr., John H. White, III and Molly C. White in their capacities as Co-Trustees of the 1983 John H. White Long-Term Trust F/B/O John H. White, Jr. and of the 1976B Partnership Trust. Similarly, "Tuleta White" collectively refers to TCW Helotes Ranch, Ltd. and Tuleta C. White, individually.

In the addendum, the parties acknowledged that the arbitration process could result in "a series of awards and rulings in this matter before everything is finally concluded," and stated they "do not want to wait months to discover that another party objects to an award or ruling by the Arbitrator" and wanted to avoid filings in the public domain. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(b) (90-day statutory deadline to seek to vacate an arbitration award). To avoid such delays, the parties agreed to the following "Objection Rule:"

> The parties shall have 20 days from the issuing of each award or ruling to object or to request reconsideration. If a party does not file an objection or request reconsideration by the 20th day following the award or ruling, the award/ruling will be final and any party shall have the right to judgment on that ruling.

In 2011, the parties agreed to a supplement to the Settlement Agreement which established an escrow fund to be used by Moore for remediation of the dam according to standards set by the Texas Commission on Environmental Quality (the "Supplement"). During the next three years, the Arbitrator heard and ruled on a series of requests for enforcement and other arbitrable disputes between the parties regarding the dam project. Moore challenged and sought to vacate each of the awards issued by the Arbitrator. The Honorable Stephen B. Ables was selected by the parties to serve as a Special Judge to determine whether any challenged award, decision, or order by the Arbitrator should be reheard, confirmed, modified, or vacated. Special Judge Ables ultimately confirmed all three of the arbitration awards challenged by Moore.

In 2014, John White filed the instant arbitration claim that gives rise to this appeal — a claim for breach of the Settlement Agreement and Supplement based on Moore's failure to begin remediation of the dam. White sought to recover damages to his land located downstream of the dam, his portion of the escrow funds, attorneys' fees, and arbitration expenses. On September 6, 2017, John White amended his pending claim to add a request for enforcement of an easement located on Moore's property. Tuleta White later joined in the amended claim.

On September 21, 2017, the Arbitrator gave the parties notice that a final arbitration hearing on the amended claim was set for November 14-16, 2017.  On October 25, 2017, John White's counsel sent a letter to Moore advising her that John White intended to conduct an inspection of the dam located on her property on November 1, 2017 in preparation for the arbitration.  The next day, John White's counsel forwarded the October 25, 2017 notice of inspection to attorney Tom Joseph via email "as a courtesy" based on communications with Tuleta White's counsel stating that Joseph was representing Moore.  Tom Joseph had not made an appearance in the arbitration.

On October 31, 2017, the day before the scheduled dam inspection, Anne Joseph Carraway, an attorney associated with Tom Joseph, P.C., sent a letter on behalf of Joseph to the Arbitrator and to counsel for John White and Tuleta White.  The letter acknowledged notice of the dam inspection and requested a postponement based on Joseph's unavailability due to a "serious family emergency."  The letter stated in relevant part:

> Although Tom has represented Myfe Moore in some recent easement issues and did intend to represent her in pending matters, he has been out of the office for the past week, due to a serious family emergency.  Unfortunately, due to this emergency, he is unable to represent her any longer, and has requested that I relay this information to you.  His inability to represent her is due to no fault of Ms. Moore's, but to his recent and future inability to give this case the attention it requires while attending to a personal family matter.

The letter went on to state that Moore was "entitled to have an attorney present at any interaction with opposing counsel" and "therefore, the inspection . . . propos[ed] for tomorrow cannot take place."  Carraway explained that she had assisted Joseph on Moore's case during the "past couple of weeks" but was not completely familiar with all the issues and the many files and reports contained in the case's long history.  She then suggested, "[b]ecause of this and the upcoming holidays, a postponement until after the new year seems appropriate," adding, "I cannot imagine that her new attorney will have time to properly prepare before then."  Carraway closed the letter

by stating, "I know Ms. Moore has actively begun trying to locate a new attorney . . . ." The only explicit reference to the upcoming arbitration hearing was in the regarding line which read, "Re: White Lake Dam Inspection/Pending Arbitration Matters."

On November 3, 2017, Moore herself sent an email to the Arbitrator and copied counsel for John White and Tuleta White. Moore's email stated:

> [p]lease review the letter that my former attorney sent you in October. Due to a family emergency, he had to remove himself from our case, so I have no lawyer currently. I have the right to have an attorney to represent me and my family, so I am going to need at least 2 weeks to locate and hire a lawyer, and am currently interviewing a firm. A new lawyer will need at least 90 days to review and evaluate the 10 years of data from the disputes that my brother brought against me and my sister. Thank you for a reply as soon as possible.

Later the same day, the Arbitrator issued a written decision denying Moore's request for a continuance of the November 14-16, 2017 arbitration hearing. The Arbitrator acknowledged receipt of Moore's email and stated, "[t]he basis of [Moore's] request was that an attorney who is not an attorney of record in this matter has had a family emergency and is unable to come into the case for Ms. Moore et al." The Arbitrator referred back to her written decision on September 17, 2015 which permitted Moore's then-counsel to withdraw but specifically instructed Moore to obtain new counsel within 15 days and required new counsel to file "an entry of appearance" in the arbitration by October 2, 2015. The Arbitrator then noted, "[n]o counsel, including the counsel with the family emergency, has made an appearance for [Moore] in the more than two (2) years since the referenced ruling." The Arbitrator further stated that the recent notice of the November 14-16, 2017 arbitration hearing on the amended breach of contract claim had given "Myfe Moore et al an additional month and a half to obtain counsel for the hearing or to make plans to represent herself in the proceedings." The Arbitrator then concluded there were "no legitimate grounds for delaying" the hearing and denied Moore's request for a continuance.

On November 9, 2017, six days after the continuance was denied, Tom Joseph wrote a letter to the Arbitrator, but did not copy counsel for John White or Tuleta White. Joseph's letter references "Re: White Lake Dam Inspection/Pending Arbitration Matters" and states:

> Just a note as a courtesy. We undertook to represent Ms. More [sic] and spent many hours familiarizing ourselves with the many events occurring in her past case history . . . On October 25, 2017, I had an emergency situation which caused my wife to be taken to an emergency room . . . this occasion would pre-empt any time I could use for Ms. Moore's case and still attend to my existing case load. My wife remains hospitalized as of this writing and my time has become more scarce for my practice. In fairness to Ms. Moore, she did not intend that your call to arbitration would be ignored.

Joseph also explained that he is a solo practitioner and Carraway, his niece, occasionally assists him on voluminous cases but is not a regular practicing attorney outside of his supervision.

The arbitration hearing proceeded as scheduled on November 14 through 16, 2017. Evidence was presented by the parties and two expert witnesses. Neither Moore nor any attorney appeared on her behalf during the three-day arbitration hearing. On February 7, 2018, the Arbitrator issued her Arbitration Decision and Award (the "Award") finding that Moore had breached the Settlement Agreement/Supplement and awarding John White damages based on the diminished value of his property due to non-remediation of the "high hazard" dam, ordering release of the escrow funds to John White and Tuleta White, and granting their request for recovery of attorneys' fees and costs of arbitration. In addition, the award granted a permanent injunction to enforce Tuleta White's easement on Moore's property and voided a separate easement document filed by Moore.

Moore filed a motion to vacate the Award based solely on the Arbitrator's failure to postpone the arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(B) (denial of a request for postponement despite a showing of sufficient cause). John White filed a response asserting, among other arguments, that Moore waived her complaint by failing to object to the

Arbitrator's ruling denying a postponement as required by the agreed Objection Rule. On June 6, 2018, Special Judge Ables issued a verdict finding that Moore failed to establish grounds to vacate the Award and denied her motion to vacate and confirmed the Award. A final judgment on the Award and an order of severance were signed by the district court on June 22, 2018. This appeal by Moore followed.

## DISCUSSION

An appellate court reviews a trial court's decision to vacate or confirm an arbitration award *de novo*. *City of Laredo v. Mojica*, 399 S.W.3d 190, 194-95 (Tex. App.—San Antonio 2012, pet. denied). Because Texas law[3] favors arbitration, judicial review of the arbitrator's award is "extraordinarily narrow" and deferential. *Id.* at 195; *Stieren v. McBroom*, 103 S.W.3d 602, 605 (Tex. App.—San Antonio 2003, pet. denied) (reviewing court may not substitute its judgment for that of the arbitrator's merely because it would have reached a different result). An arbitration award has the same effect as the judgment of a court of last resort. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). All reasonable presumptions are indulged in favor of the arbitration award and none against it. *Id.* As a corollary, the arbitration decision under review is presumed correct on matters where the record is silent. *NAFTA Traders, Inc. v. Quinn*, 339 S.W.3d 84, 102 (Tex. 2011).

In challenging the Award, Moore had the burden to establish one of the statutory grounds for vacating an award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (trial court "shall confirm" the award unless grounds are offered to vacate, modify or correct); *see also id.* § 171.088(a) (grounds to vacate award), (c) (if motion to vacate is denied, court shall confirm the award). Specifically, the party seeking to vacate an arbitration award bears the burden in the trial

---

[3] The parties expressly agreed the Texas General Arbitration Act ("TAA") would govern the arbitration proceedings.

court of bringing forth a sufficient record that establishes its basis for vacating the award. *NAFTA*, 339 S.W.3d at 101. If the record does not demonstrate error, an award must be presumed correct. *Id.* at 102; *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 400 (Tex. App.—Dallas 2009, pet. denied).

Moore's sole ground[4] for vacating the Award was that the arbitrator "refused to postpone the hearing after a showing of sufficient cause for the postponement." TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(B). On appeal, Moore asserts that she submitted three requests for continuance — Carraway's October 31, 2017 letter, Moore's own November 3, 2017 email, and Joseph's November 9, 2017 letter — which showed her attorney had a family emergency that precluded his representation and therefore she established "sufficient cause" to postpone the hearing scheduled to begin in two weeks. The appellees argue that there was waiver; Joseph was not attorney of record for Moore in the arbitration; only two of Moore's requests for continuance came before the ruling denying the continuance and the requests were not verified and did not contain specific facts to establish sufficient cause for postponement; Moore failed to supply a complete record for the judicial review of the Arbitrator's ruling; and Moore has a history of changing attorneys to delay the arbitration proceedings and avoid unfavorable rulings and failed to show she was not at fault.

### *Waiver*

Appellees argue that Moore waived her complaint regarding denial of her request to postpone the hearing because she did not object to or request reconsideration of the Arbitrator's

---

[4] In addition to the motions for leave addressed in footnote 1 of this opinion, Moore's reply brief raises a separate vacatur argument under subsection (a)(3)(D) of section 171.088. That ground was not raised in Moore's motion to vacate. Because there is nothing in the record indicating that ground was raised at the trial court's hearing on Moore's motion to vacate, we do not consider that argument. *See Black v. Shor*, 443 S.W.3d 154, 163 (Tex. App.—Corpus Christi-Edinburgh 2013, pet. denied) (party seeking to vacate arbitration award must present any grounds for doing so to the trial court or those complaints are waived on appeal).

ruling within twenty days as required under the agreed Objection Rule; therefore, she failed to preserve any error for appellate review. *See* TEX. R. APP. P. 33.1(a).

At its core, arbitration is "simply a matter of contract between the parties" and the arbitrator's powers are derived from the parties' agreement. *NAFTA*, 339 S.W.3d at 87 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "[A]s with any other contract, the parties' intentions control" and "courts and arbitrators must give effect to the contractual rights and expectations of the parties" in construing or enforcing an arbitration agreement. *Id.* at 90 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal citations omitted)). Parties may agree on the rules under which any arbitration will proceed. *Stolt-Nielsen*, 559 U.S. at 683.

Here, as noted above, the parties were contractually obligated to arbitrate any disputes related to interpretation or enforcement of the Settlement Agreement and Supplement and began doing so in 2004, continuing to the present. In addition, the parties agreed to the Arbitration Rules, including the Objection Rule, to govern the procedures used throughout the course of arbitration. As set forth above, in the Objection Rule the parties expressly stated their intent to shorten the period for objecting to an award or ruling by the Arbitrator from months to 20 days. To achieve that purpose, the agreed Objection Rule required that a party object or move to reconsider any "award or ruling" by the Arbitrator within 20 days, and specified that upon a failure to do so the award or ruling would become "final and any party shall have the right to judgment on that ruling." The parties stated the purpose of the 20-day objection period was to avoid the uncertainty inherent in "wait[ing] months to discover that another party objects to an award or ruling by the Arbitrator" and avoid the constant public filing of awards with the court for confirmation.

Moore initially asserts the 20-day Objection Rule did not apply to the Arbitrator's interlocutory order denying her motion for continuance. In support, Moore isolates one phrase,

"the right to judgment on that ruling," and argues the Objection Rule only applies to an award or ruling on which the party has a "right to judgment" absent objection. Since neither party had a "right to judgment" based on the ruling denying a continuance and the losing party had no right to interlocutory judicial review of the ruling, Moore contends applying the Objection Rule in the continuance context makes no sense. Moore argues, "[a]t best, the twenty (20) day provision for Moore's objections applied only when the Arbitrator's final Default Award was issued." We disagree. Moore's restrictive interpretation of the Objection Rule ignores the plain language of that agreed rule which expressly applies to interim "rulings" as well as "awards." Denial of a request for postponement is an interlocutory "ruling," not an "award" subject to judicial review under the TAA. *See SM Architects, PLLC v. AMX Veteran Specialty Servs., LLC*, 564 S.W.3d 902, 905-06 (Tex. App.—Dallas 2018, pet. denied) (noting that the term "award" under the TAA contemplates finality such as "a judgment, sentence, or final decision," and that there is no judicial review of an interlocutory order under the TAA). In addition, Moore overlooks the Objection Rule's statement that, absent an objection, an award or ruling becomes "final" in addition to also conferring the right to judgement as appropriate. Reading the agreed rule as a whole and in view of the parties' stated purpose, we construe the Objection Rule as requiring an objection or request for reconsideration of a ruling denying a continuance of an arbitration hearing.

In addition to the Objection Rule agreed to by the parties, the familiar rules for preserving complaints on appeal, as well as presenting a complete record, apply equally to judicial review of an arbitration award. *NAFTA*, 339 S.W.3d at 101 ("[a] court must have a sufficient record of the arbitral proceedings, and complaints must have been preserved, all as if the award were a court judgment on appeal."). Thus, Moore was required to object to the Arbitrator's ruling denying the postponement in order to preserve any error for review. *Id.*; TEX. R. APP. P. 33.1(a).

Moore alternatively asserts she did comply with the 20-day Objection Rule because Joseph's letter to the Arbitrator dated November 9, 2017 constituted a timely objection and/or request for reconsideration. However, Joseph's letter merely provided more detail regarding his family emergency and explained why Carraway was unable to represent Moore on her own. Although it was sent within the twenty-day period for objections, Joseph's letter cannot fairly be construed as an "objection" or request for "reconsideration" of the Arbitrator's ruling because the letter's substance does not contain any expression of an objection or any request that the Arbitrator reconsider her decision to deny the continuance and proceed with the November 14-16, 2017 hearing. The letter ends by stating that Moore did not intend to ignore the "call to arbitration," but goes no further even though the hearing was still five days away. Indicating the Arbitrator did not view Joseph's letter as an objection or reconsideration request, her Award recites that "no responsive pleading" was filed by Moore after the ruling denying postponement of the hearing. As noted, Moore did not appear at the hearing and no one appeared on her behalf, so an objection or request to reconsider was not made at the hearing. Moore first raised a complaint about the Arbitrator's denial of her request for postponement in her motion to vacate the Award filed on April 26, 2018.

Based on the record before us, we therefore conclude that Moore failed to preserve her complaint for review. TEX. R. APP. P. 33.1(a); *NAFTA*, 339 S.W.3d at 102.

### *Showing of "Sufficient Cause" to Postpone Hearing*

Even if Moore had preserved her complaint for review, the record here does not support a finding that she established "sufficient cause" for postponement of the arbitration hearing, and thus fails to show the Arbitrator abused her discretion in denying the postponement. *See State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984) (granting or denial of continuance is matter of sound discretion).

*Tom Joseph Was Not Attorney of Record for Moore in the Arbitration*

The Arbitrator's decision denying Moore's request for postponement relies on the fact that, since her September 2015 order and as of her ruling on November 3, 2017, no attorney had entered an appearance in the arbitration on behalf of Moore. The Arbitrator acknowledged the basis of Moore's request was Joseph's family emergency, which prevented him from "com[ing] *into* the case for Moore et al." (emphasis added). The Arbitrator stressed in her ruling that Joseph was "not an attorney of record in this matter" and during the two-year period since her last attorney withdrew "no counsel, including [Joseph] . . . has made an appearance for Moore . . . ." Finally, the Arbitrator noted that the notice of setting gave Moore one and one-half months to obtain an attorney for the November 14-16, 2017 hearing.

Moore first argues that a formal appearance by counsel in the arbitration was not required. However, Moore ignores the language in the Arbitrator's September 17, 2015 order stating that "[i]f no counsel *files an entry of appearance* in this arbitration by October 2, 2015," then pleadings and notices were to be served on Moore directly. (emphasis added). Moore's argument is further contradicted by references in the Arbitration Rules to counsel "appearing of record." For example, Rule 4 governing communications with the Arbitrator requires a copy of any correspondence with the Arbitrator to be sent to the opposing party "or to counsel if one appears of record." The Arbitrator's September 17, 2015 order and the Arbitration Rules clearly envisioned an entry of appearance in the arbitration by a party's counsel.

Moore next argues there was no reason for her to engage a new attorney to represent her in the arbitration after the September 17, 2015 order because the disputes were resolved and there was "no ongoing activity" in the arbitration until the November 14-16, 2017 hearing was set. Moore also points out that, according to the 2015 order, "the only consequence" of her not having an attorney was direct service of any pleadings or notices. The record shows, however, that John

White filed his claim for breach of the Settlement Agreement on October 21, 2014; therefore, it was pending at the time of the 2015 order. The record also shows that Moore engaged an attorney, Dale Mockford, during 2016 to resist the post-judgment collection efforts by John White of the $700,000 owelty owed by Moore under the 2015 Arbitration award; Mockford never appeared of record on Moore's behalf in the arbitration. When John White filed his amended claim for breach of contract on September 6, 2017, he served Moore directly because no attorney had appeared for her in the arbitration.

Finally, Moore argues that, even though no attorney had entered an appearance in the arbitration on her behalf, "all opposing counsel and the Arbitrator were aware of Joseph's representation of Moore by at least October 13, 2017, the date on which Joseph was included on the email distribution of the [Tuleta White] Parties' joinder in the Amended Claim." John White responds that Joseph was copied "as a courtesy" because it was learned that Joseph attended a meeting between Moore and Tuleta White and her counsel concerning the easement dispute between them. In their briefs, John White and Tuleta White stress that it was unknown whether Joseph would be representing Moore at the upcoming arbitration hearing, or merely informally as other attorneys had done for Moore on related matters. Moore argues that on October 23, 2017, Joseph again emailed Tuleta White's attorney stating he would be representing Moore "on all matters," which included the upcoming arbitration. Carraway's letter dated October 31, 2017 stated that Joseph "has represented Moore in some recent easement issues and did intend to represent her in pending matters." Even if Joseph intended to represent Moore at the upcoming arbitration hearing on November 14-16, 2017, the record shows he had not entered an appearance in the arbitration on behalf of Moore and had not otherwise notified the Arbitrator that he was counsel of record for Moore on the amended breach of contract claim to be resolved at the

upcoming hearing. Therefore, the Arbitrator's reason for denying Moore's request for postponement, as stated in her written order, is supported by the record.

*Request for Postponement Did Not Contain Sufficient Information*

In addition, the information before the Arbitrator at the time of her ruling denying the postponement did not establish sufficient cause to postpone the hearing. Moore asserts she established "sufficient cause" for a postponement through her "three requests for postponement" based on her attorney Joseph's serious family emergency: the Carraway letter dated October 31, 2017; Moore's email dated November 3, 2017; and Joseph's letter dated November 9, 2017. The determination of whether the Arbitrator abused her discretion in denying the postponement must be based solely on the information before her at the time of her ruling. *See Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 272 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (appellate court may not evaluate trial court's ruling based on materials that were not before it at the time that it ruled). As noted above, Joseph's letter providing more detail concerning his family emergency was not sent until after the Arbitrator's ruling denying the postponement on November 3, 2017. Thus, in reviewing the Arbitrator's decision to deny a postponement, neither the trial court nor this court can consider Joseph's November 9, 2017 letter.[5]

Looking at the two documents before the Arbitrator at the time of her ruling, Carraway's letter states only that Joseph intended to, but no longer could, represent Moore in the upcoming arbitration matter due to a serious family emergency. Carraway's letter provided no further detail regarding the family emergency such as its nature, its expected duration, etc. Moore's email a few days later referred only to her "former attorney's family emergency." No further information was provided to the Arbitrator before she made her ruling on November 3, 2017, the same day as

---

[5] For the same reason, neither the trial court nor this court can consider Moore's sworn declaration attached to her motion to vacate.

Moore's email. In addition, these two requests for postponement were made approximately two weeks before the scheduled arbitration hearing. Moore's email states that she will "need at least 2 weeks to locate and hire a lawyer" and she is "currently interviewing a firm." Carraway's October 31, 2017 letter states, "I know that Ms. Moore has actively begun trying to locate a new attorney." Both Carraway and Moore stated in their communications to the Arbitrator that, given the lengthy history of the family dispute, a new attorney would need sufficient time to become familiar with the case and suggested a 90-day postponement. In addition, the record reflects that Moore has repeatedly changed attorneys during the course of the arbitration proceedings — on at least two occasions, the attorneys' withdrawal occurred shortly before a scheduled hearing. The Arbitrator was entitled to consider Moore's request for postponement of the November 14-16, 2017 hearing in the context of the entire case.

The term "sufficient cause" for postponement of an arbitration proceeding is not defined in the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(B). Texas courts have held that the Rules of Civil Procedure governing motions for continuance in a trial court are "instructive." *See Mann v. Mann*, No. 04-07-00154-CV, 2008 WL 577266, at *3 (Tex. App.—San Antonio March 5, 2008, pet. denied) (mem. op.) (the grounds and procedure applicable to a motion for continuance in a trial court are instructive in the context of "sufficient cause" under section 171.088(a)(3)(B)); *see also Hoggett v. Zimmerman, Axelrad, Meyer, Stern & Wise, P.C.*, 63 S.W.3d 807, 811 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (same). Rule 251 states that no continuance shall be granted "except for sufficient cause supported by affidavit" or by consent of the parties or operation of law. TEX. R. CIV. P. 251. Rule 253 provides that, except as provided elsewhere in the rules, "absence of counsel will not be good cause for a continuance or postponement . . . except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record." TEX. R. CIV.

- 15 -

P. 253. Generally, when a movant fails to comply with Rule 251's requirement that the motion for continuance be supported by affidavit, the reviewing court presumes the trial court did not abuse its discretion in denying the motion. *See Villegas v Carter*, 711 S.W.2d 624, 626 (Tex. 1986). However, as Moore notes, the courts have recognized that when an emergency leaves a party without legal representation due to no fault of their own, the absence of an affidavit is not dispositive. *See id.* Here, as discussed above, Joseph's family emergency could not leave Moore without legal representation where he had not yet entered the arbitration on her behalf. *See Mann*, 2008 WL 577266, at *1 (arbitrator who refused to postpone hearing based on attorney's unavailability reasoned that attorney had not made an entry of appearance in the arbitration or obtained an order of substitution from the trial court). In addition, even setting aside the fact that the two requests for continuance by Carraway and Moore were unsworn, the requests failed to provide the Arbitrator with evidence of sufficient cause to postpone the hearing that was still two weeks away.

For all of the reasons stated above, the record here does not reflect that the Arbitrator clearly abused her discretion when she denied Moore's request to postpone the arbitration hearing. *See Villegas*, 711 S.W.2d at 626 (ruling granting or denying a motion for continuance will not be disturbed unless the record discloses a clear abuse of discretion).

## CONCLUSION

Based on the foregoing analysis, we overrule Moore's issue on appeal and affirm the trial court's judgment denying Moore's motion to vacate and confirming the Arbitration Award.

Liza A. Rodriguez, Justice