**Affirmed and Memorandum Opinion filed December 6, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00014-CV

## TEXAS REIT, LLC, ALI CHOUDHRI, DALIO HOLDINGS I, LLC AND DALIO HOLDINGS II, LLC, Appellants

### V.

## MOKARAM-LATIF WEST LOOP, LTD. AND ALI MOKARAM, Appellees

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2012-27197-A**

## MEMORANDUM OPINION

Appellants Texas REIT, LLC, Ali Choudhri, Dalio Holdings I, LLC, and Dalio Holdings II, LLC appeal the trial court's order confirming an arbitration award and denying their motion to vacate the award. We affirm.

### BACKGROUND

We present the facts as found by the arbitrators. In June 2008, Texas REIT, an entity formed for the purpose of buying and selling real estate, executed a

promissory note in favor of International Bank of Commerce (IBC) in the amount of $8,640,000 (the Note). Choudhri owned a 65% interest in Texas REIT and was the sole manager of Texas REIT at all times. Appellee Ali Mokaram[1] owned a 30% interest in Texas REIT, and the Estate of Ede I. Nemeti owned a 5% interest.[2] Mokaram's 30% interest was transferred via two different written agreements, each of which assigned a 15% interest in Texas REIT to Mokaram. The Note was secured by a retail strip center and a contiguous Walgreen's on Westheimer Road in Houston (the Property). WCW Houston Properties, LLC, not a party to this action, acquired a second lien on the Property and subsequently sought to foreclose.[3] According to the award, Choudhri then embarked on a "purposefully orchestrated" plan to wrongfully deprive Mokaram of his lawful ownership interest in Texas REIT.

The Note was secured by the Property pursuant to a deed of trust executed by Texas REIT (the Deed of Trust). Choudhri personally guaranteed the Note by executing a guaranty (the Guaranty). The Deed of Trust and the Guaranty were executed as part of one transaction for Texas REIT to acquire the Property (collectively, the Loan Documents). All three documents contained similar, if not identical, arbitration clauses, and because Choudhri signed the Guaranty he was individually subject to arbitration.

Ten years later, on May 25, 2018, Dalio I acquired the Note and Deed of Trust for $6,334,189.88, the full amount due and owing under the Note at the time. Thirty-nine days later, on July 3, 2018, Dalio I foreclosed on the Property. The arbitrators

---

[1] We include Mokaram-Latif West Loop, Ltd. in the style of this appeal because it is listed as a party on the trial court's confirmation of the arbitration award. The claims at issue in this appeal, however, were filed by Mokaram on behalf of Texas REIT.

[2] Nemeti's estate was represented below by Erika Nemeti, the executrix of the estate. Nemeti is not a party to this appeal.

[3] Texas REIT executed this note in favor of Architectural Services Inc., another non-party, in the amount of $1,500,000.

determined, and Choudhri admitted, that Choudhri was the true owner of Dalio I and Dalio II (collectively, the Dalio Entities), and had installed his girlfriend as a "front" to hide his ownership in Dalio I.

At the time of the foreclosure, multiple persons attended the auction and were ready, willing, and able to bid on and purchase the Property. Despite the presence of those bidders, who could offer immediate cash or the equivalent, Dalio I took steps to ensure that it would take title to the Property without paying for it by making credit bids for amounts that were not owed to Dalio I, and that would prevent other bidders from purchasing the Property. On July 3, 2018, the same day that Dalio I foreclosed and received the trustee's deed for the Property, Dalio I granted and conveyed a deed of trust to Dalio II to give it a "first lien" on the Property to secure a non-existent $10,000,000 obligation. On September 3, 2019, Dalio II foreclosed on its bogus lien on the Property and the Dalio II Trustee conveyed the Property, as Trustee, to Dalio II by a Trustee's Deed dated September 3, 2019. Choudhri orchestrated each of the foreclosures.

Choudhri, through the Dalio Entities, conducted a wrongful foreclosure of the Property using credit bids for funds that were not owed by Texas REIT with the purpose and intent of depriving Texas REIT and WCW Houston Properties of the Property and any lien on the Property. At the time of the foreclosure, the true balance due and owing on the Note was $5,727,474.22, and the Property was worth $14 million.

Choudhri owed a fiduciary duty to Texas REIT to minimize its debts and to settle and compromise claims by creditors if it was in the best interest of Texas REIT to do so. "Instead of taking steps in the best interest of [Texas REIT], Choudhri instead planned and orchestrated his fraudulent foreclosure scam to deprive [Texas REIT] and its members and creditors of the Property and its equity."

3

Mokaram subsequently asserted claims, individually, and on behalf of Texas REIT, alleging Choudhri, through the Dalio Entities and other entities, breached the Texas REIT agreement, wrongfully foreclosed on the Property, conspired to wrongfully foreclose, and breached fiduciary duties owed to Texas REIT.

After the Dalio Entities moved to compel arbitration, on December 3, 2018, the trial court ordered the following claims to arbitration:

1.      Mokaram's wrongful foreclosure claim against Dalio I;

2.      Mokaram's conspiracy claim against the Dalio Entities and Choudhri;

3.      Mokaram's claim of knowing participation in a breach of fiduciary duty against the Dalio Entities;

4.      Mokaram's breach of fiduciary duties claims against Choudhri relating to or arising out of any of the Arbitrable Claims;

5.      Mokaram's breach of the Texas REIT limited liability company agreement against Choudhri relating to or arising out of any of the Arbitrable Claims;

6.      Nemeti's breach of fiduciary duties claims against Choudhri relating to or arising out of any of the Arbitrable Claims;

7.      Nemeti's breach of the Texas REIT limited liability company agreement against Choudhri relating to or arising out of any of the Arbitrable Claims; and

8.      Nemeti's application for receivership.

The arbitrators held a five-day hearing, and concluded that (1) Mokaram had standing to assert derivative claims on behalf of Texas REIT; (2) the foreclosure orchestrated by Choudhri and the Dalio Entities was wrongful; (3) Choudhri breached the company agreement of Texas REIT; (4) Choudhri breached fiduciary duties owed to Texas REIT; (5) the Dalio Entities knowingly participated in Choudhri's breaches of fiduciary duties; (6) Choudhri committed constructive fraud;

4

and (7) Choudhri and the Dalio Entities conspired to wrongfully transfer the Property and conceal Choudhri's involvement in the transfers.

The arbitrators further concluded that Choudhri did not meet his burden of proof on any of his affirmative defenses. Finally, in awarding damages, the arbitrators concluded that if they awarded damages to Texas REIT, Choudhri was "likely to take whatever steps he can, lawful or not, to deprive Mokaram of the benefits of his ownership interest in [Texas REIT], which means causing damage and harm to [Texas REIT]." The arbitrators concluded that Mokaram could recover individually on all claims including the derivative claims. The arbitrators also concluded that Mokaram was entitled to recover attorney's fees.

Mokaram subsequently moved to confirm the arbitrators' award, and Choudhri and the Dalio Entities moved to vacate it. After a hearing, the trial court granted Mokaram's motion in its entirety, confirmed the arbitrators' award, denied appellants' motion to vacate, and signed an order in favor of Mokaram. Appellants filed this interlocutory appeal.[4] *See* Tex. Civ. Prac. & Rem. Code § 171.098(a)(3) (permitting interlocutory appeal of order confirming or denying confirmation of an award).

## ANALYSIS

Appellants challenge the trial court's confirmation of the arbitration award on the grounds that (1) the arbitration agreement did not include Mokaram as a party to the agreement; (2) the scope of the agreement did not include the claims asserted; (3) the arbitrators exceeded their authority; (4) the arbitrators denied appellants' motion to continue the final hearing; and (5) the arbitrators committed material

---

[4] The trial court's confirmation of the arbitration award is not a final judgment because not all of the parties' claims were resolved by the underlying arbitration proceeding.

5

errors of law. Before addressing appellants' issues we must first determine whether the Federal Arbitration Act (FAA) or the Texas Arbitration Act (TAA) governs confirmation of the arbitration award.

## I. The FAA governs confirmation of the arbitration award.

In the arbitrators' final award, they found that the Note and the Deed of Trust contained similar mandatory arbitration clauses encompassing Mokaram's and Nemeti's derivative claims on behalf of Texas REIT. The Note specified the disputes covered by the arbitration provision:

> Arbitrable disputes include any and all controversies or claims between the parties of whatever type or manner, including without limitation, any claim arising out of or relating to this note, all past, present and/or future credit facilities and/or agreements involving the parties, any transactions between or involving the parties, and/or any aspect of any past or present relationship of the parties, whether banking or otherwise, specifically including any alleged tort committed by any party.

Similarly, the arbitration provision in the Deed of Trust provided:

> Any and all commercial controversies between the parties, shall be resolved by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association in effect at the time of filing, unless the commercial arbitration rules conflict with this provision, and in such event the terms of this provision shall control, to the extent of the conflict.

The Deed of Trust likewise specified the disputes covered by the arbitration provision:

> Arbitrable disputes include any and all controversies or claims between the parties of whatever type or manner, including without limitation, any claim arising out of or relating to this deed of trust, all past, present and/or future credit facilities and/or agreements involving the parties, any transactions between or involving the parties, and/or any aspect of any past or present relationship of the parties, whether banking or

otherwise, specifically including any alleged tort committed by any party.

> Both the Note and Deed of Trust defined "the parties" for purposes of the arbitration provisions as Texas REIT, IBC, and the following additional parties:

> For purposes of this provision, "the parties" means borrower and lender, and each and all persons and entities signing this agreement or any other agreements between or among any of the parties as part of this transaction. "The parties" shall also include individual partners, affiliates, officers, directors, employees, agents and/or representatives of any party to such documents, and shall include any other owner and holder of this agreement.

All the Loan Documents were signed by Choudhri as manager of Texas REIT. The arbitrators found that Mokaram's and Nemeti's derivative claims on behalf of Texas REIT related to or arose out of Dalio I's foreclosure of the Property; therefore, the claims fell within the scope of the arbitration provisions of the Note and Deed of Trust.

Both the Note and the Deed of Trust also contained the following clause stating that the FAA governed arbitration under the documents:

> The parties acknowledge that this agreement evidences a transaction involving interstate commerce. The Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings pursuant to the arbitration clause of this agreement.

The Loan Documents also contained a clause stating that "material errors of law shall be grounds [in addition to all others] for vacatur of an award rendered pursuant to this agreement."

Appellants assert that the above clause permits them to seek vacatur for material errors of law, which are not statutory grounds for vacatur under either the FAA or TAA. We disagree. Both the FAA and TAA provide specific statutory grounds for vacating an arbitration award. *See* 9 U.S.C. § 10; Tex. Civ. Prac. & Rem.

7

Code § 171.088. Under the FAA, the statutory grounds provide the exclusive regimes for vacating or modifying an arbitration award. *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008). However, as to arbitration agreements to which only the TAA applies or to which both the TAA and FAA apply, parties may contract for expanded court review of the arbitration award by agreeing that the arbitrators do not have the power or authority to reach a decision based on reversible error. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 91–101 (Tex. 2011). Our review, therefore, turns on whether the FAA or TAA governs vacatur of the award in this case.

The above-quoted clause stating that, "The Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings pursuant to the arbitration clause of this agreement" indicates the parties unequivocally contracted for the FAA to govern arbitration. *See Nafta Traders*, 339 S.W.3d at 98 n. 64 (parties' choice of FAA controls; otherwise both FAA and TAA may govern).

Appellants challenge the applicability of the FAA asserting (1) the clause does not provide that the FAA exclusively applies; (2) the term "proceedings" refers to the arbitration proceedings, not confirmation of the arbitration award; and (3) Mokaram invoked the TAA in the trial court.

Appellants first assert that because the documents contained a choice-of-law provision stating that Texas law would apply, the parties necessarily intended that only the TAA would govern arbitration. The Supreme Court of Texas has rejected appellants' argument. *See In re L & L Kempwood Associates, L.P.*, 9 S.W.3d 125, 127 (Tex. 1999). The court in *L & L Kempwood* held that because the choice-of-law provision did not specifically exclude the application of federal law, the court declined to read the choice-of-law clause as having such an effect. *Id*. The choice-of-law clause in the Loan Documents here similarly does not preclude application

8

of federal law. Therefore, the choice-of-law provision stating that Texas law generally applied to the contract did not override the specific clause requiring governance by the FAA.

Appellants next assert that the term "proceedings" as used in the clause invoking the FAA does not apply to confirmation or vacatur of the arbitration award but solely to the arbitration proceeding before the arbitrators. We recently rejected a similar argument holding that confirmation of an arbitration award is "part and parcel" of the arbitration process. *See Crown Bus. Park, Inc. v. Muhammed*, No. 14-21-00317-CV, 2022 WL 3452900, at *6 (Tex. App.—Houston [14th Dist.] Aug. 18, 2022, no pet.) (mem. op.). In *Crown Business*, a party sought additional attorney's fees incurred while seeking confirmation of the arbitration award, arguing that the contract provided for attorney's fees in "arbitration or other legal proceeding." *Id.* The party argued that confirmation of the award and defense of a motion to vacate constituted another "legal proceeding." *Id.* We held that seeking confirmation of the award and responding to a motion to vacate were not separate legal proceedings but part of the arbitration process. *Id.* We therefore reject appellants' argument that the clause requiring governance by the FAA did not apply to confirmation of the arbitrators' award.

Finally, appellants assert that Mokaram waived his right to assert that the FAA governs because he invoked the "protections of Section 171.086 of the Texas Civil Practice and Remedies Code." The objective intent of the parties as expressed in the agreement controls the construction of an unambiguous contract, not a party's after-the-fact conduct. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006). Any conduct after signing the agreement would not waive applicability of the FAA as agreed by the parties. Mokaram therefore did not waive applicability of the FAA by citing to a provision in the TAA after entering into the Loan Documents.

Because none of appellants' arguments can overcome the contracts' specific invocation of the FAA, we conclude the FAA applied to the arbitration proceedings and the trial court's confirmation of the arbitrators' award.

## II. Statutory grounds for vacatur of arbitration award and standard of review

An arbitration award has the same effect as the judgment of a court of last resort, and a court reviewing the award may not substitute its judgment for that of the arbitrators merely because it would have reached a different result. *Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co.*, 164 S.W.3d 438, 442 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Under the terms of the FAA, an arbitration award must be confirmed unless it is vacated, modified, or corrected under one of the limited grounds set forth in sections 10 and 11 of the FAA. 9 U.S.C. §§ 9–11; *Broemer v. Houston Law. Referral Serv.*, 407 S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

> The FAA provides the following statutory grounds for vacatur:
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10.

These statutory grounds provide the exclusive regimes for vacating an arbitration

award under the FAA. *Hall St. Assoc.*, 552 U.S. at 590.

We review de novo a trial court's order confirming or vacating an arbitration award; however, our review of the underlying award is extremely deferential. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *In re Marriage of Piske*, 578 S.W.3d 624, 629 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Judicial review of the arbitration process is limited, and even a mistake of law or fact by the arbitrator in applying substantive law is not a proper ground for vacating an award. *See Aston Solar, LLC v. Sunnova Energy Corp.*, No. 14-21-00074-CV, 2022 WL 1256427, at *2 (Tex. App.—Houston [14th Dist.] Apr. 28, 2022, no pet.) (mem. op.). We indulge all reasonable presumptions in favor of the award and none against it. *See Delgado*, 95 S.W.3d at 238.

Having determined the FAA applies, we turn to appellants' grounds for vacatur.

### III. The arbitrators did not exceed their authority.

In appellants' first and second issues they assert the arbitrators exceeded their authority because the arbitration agreements did not include Mokaram or the claims asserted.

An arbitrator's authority is derived from the parties' agreement to submit to arbitration. *Nafta Traders*, 339 S.W.3d at 90. Therefore, we look to the arbitration agreement to determine whether the arbitrators had authority to decide the issue. *See id.*; *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Arbitrators exceed their authority when they disregard the contract and dispense their own idea of justice. *Bernhard*, 423 S.W.3d at 534. However, "an arbitrator does not exceed his authority simply because he may have misinterpreted

the contract or misapplied the law." *Id*. The proper inquiry is not whether the arbitrator correctly decided an issue, but whether the arbitrator had authority to decide the issue at all. *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017). Arbitrators do not exceed their authority when the matter they address is one that the parties agreed to arbitrate. *Nafta Traders*, 339 S.W.3d at 89. We resolve any doubts regarding the scope of what is arbitrable in favor of arbitration. *See In re FirstMerit Bank*, N.A., 52 S.W.3d 749, 753 (Tex. 2001).

## A. The arbitration agreements bind all parties.

Appellants first assert that there is no arbitration agreement between any of the Dalio Entities and Mokaram. The Dalio Entities, however, moved to compel arbitration and alleged that Mokaram's claims fell within the scope of the arbitration agreements in the Note and Deed of Trust, and that the Dalio Entities, Choudhri, Mokaram, and Nemeti were all bound by the arbitration agreements. By moving to compel arbitration the Dalio Entities waived any complaint that they were not bound by the arbitration agreements or that the claims were not arbitrable. *See Thomas Petroleum, Inc. v. Morris*, 355 S.W.3d 94, 97 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). The reason for finding waiver lies in the "inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration[.]'" *In re Citigroup Global Mkts, Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008)). "This reason equally applies when a party substantially invokes the arbitral process to the other party's detriment." *Thomas Petroleum*, 355 S.W.3d at 97. Having sought to compel arbitration in the trial court, the Dalio Entities cannot claim

on appeal that they were not subject to arbitration. *Id.*

In appellants' reply brief they concede that derivative claims on behalf of Texas REIT are arbitrable. As a derivative plaintiff, Mokaram stepped into the shoes of Texas REIT and was therefore bound by the arbitration agreements. *See Cedillo v. Immobiliere Jeuness Establissement*, 476 S.W.3d 557, 566 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("Generally, a plaintiff bringing claims derivatively "steps into the shoes" of the party on behalf of whom the derivative plaintiff sues and is bound by any agreements to which that party has agreed.").

Appellants assert, however, that Mokaram could not bring a derivative claim because he was not a "member" of Texas REIT. The arbitrators determined that Mokaram owned a 30% interest in Texas REIT and was a member of Texas REIT. The issue of Mokaram's membership in Texas REIT, a matter of contract interpretation, was an issue for the arbitrators, not the trial court, or this court, to decide. *See Petrobras Am., Inc. v. Astra Oil Trading NV*, No. 01-11-00073-CV, 2012 WL 1068311, at *17 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (mem. op.) ("In actuality, what Petrobras is asking this Court to do is exactly what we cannot: second-guess the Panel's decision on the merits of contract interpretation."). Therefore, Mokaram, as a member of Texas REIT, was bound as a party to the arbitration agreement.

Finally, Choudhri asserts there is no arbitration agreement between him and Mokaram. To the contrary, Choudhri signed the Note and the Deed of Trust on Texas REIT's behalf. As part of the same transaction Choudhri signed the Guaranty in his individual capacity. The Guaranty contained a similar arbitration clause requiring all disputes under the contracts to be arbitrated. The arbitrators found that Choudhri was bound by his signature on the Guaranty. Again, we cannot disturb this decision based on the contracts' interpretation. *See id*. We conclude that all parties were bound by

the arbitration agreements or, as in the case of the Dalio Entities, waived the right to complain about arbitrability by seeking arbitration in the trial court.

**B.     Mokaram's claims were arbitrable under the Loan Documents' definition of arbitrable disputes.**

Appellants next assert that Mokaram's claims did not fall within the scope of the arbitration agreement because the arbitrators awarded Mokaram damages directly rather than derivatively.

We "resolve any doubts about an arbitration agreement's scope in favor of arbitration." *In re FirstMerit Bank*, 52 S.W.3d at 753. To determine whether a claim falls within the scope of the agreement, courts must focus on the factual allegations of the pleadings rather than the legal causes of action asserted. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). If the facts alleged touch matters, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract containing the arbitration agreement, then the claim is arbitrable. *Rodriguez v. Tex. Leaguer Brewing Co.*, 586 S.W.3d 423, 432 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

The arbitration agreement provides that arbitrable disputes are "any and all controversies or claims between the parties of whatever type or manner[.]" The use of such broad language evidences the parties' intent to be inclusive rather than exclusive. *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 19–20 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (regarding an agreement to arbitrate "any disputes" arising out of or in connection with the agreement); *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (regarding an agreement to arbitrate "[a]ny dispute arising out of or in connection with this contract" and concluding that the agreement "embrace[d] all disputes between the parties having a significant relationship to the contract

regardless of the label attached to the dispute").

Appellants' argument that Mokaram's disputes did not fall within the scope of the agreement because he received damages directly rather than derivatively is based on a false premise. Acknowledging that the derivative claims were within the scope of the agreement, appellants contend that the arbitrators nevertheless exceeded their powers because the award required appellants to pay Mokaram directly, rather than awarding relief to Texas REIT.

The record reflects that Mokaram brought his claims derivatively on behalf of Texas REIT. The arbitrators concluded that Mokaram could recover individually on all claims including the derivative claims because they anticipated Choudhri, as manager of Texas REIT, would take steps to deprive Mokaram of the benefits of his ownership interest in Texas REIT and would damage Texas REIT in the process. Texas law allows such an award "if justice requires." Tex. Bus. Orgs. Code § 101.463 ("a recovery in a direct or derivative proceeding by a member may be paid directly to the plaintiff or to the limited liability company if necessary to protect the interests of creditors or other members of the limited liability company."). A court's decision to treat an action as a direct action so as to allow recovery to be paid directly to a shareholder plaintiff, as opposed to the corporation, does not mean that the action is no longer a derivative proceeding. *Sneed v. Webre*, 465 S.W.3d 169, 188 (Tex. 2015). Therefore, the arbitrators' award of damages directly to Mokaram did not change the arbitrability of the derivative claims. Mokaram's derivative claims fell within the scope of the arbitration agreement.

We overrule appellants' first two issues.

## IV. Termination of the arbitration agreement was a matter for the arbitrators to decide.

In appellants' third issue they assert the trial court erred in denying their

15

motion to vacate the arbitration award because the arbitrators "refused to recognize the validity of the termination of the arbitration agreements." On September 1, 2020, Choudhri attempted to terminate the arbitration agreement on behalf of himself, Texas REIT, and the Dalio Entities. The arbitrators determined this attempt was not effective because Choudhri could not act unilaterally on Texas REIT's behalf.

As discussed above, the arbitration agreement was broad and included "any and all controversies or claims between the parties of whatever type or manner[.]" Where the agreement contains a sweeping arbitration clause covering all disputes and where the arbitration clause does not expressly exclude disputes over the termination provision, disputes over these matters should be submitted to arbitration. *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 73 (2d Cir. 1997). A dispute about whether the parties agreed to terminate the arbitration agreement, is a question for the arbitrator, not the court. *Teamsters Loc. Union No. 89 v. Kroger Co.*, 617 F.3d 899, 906 (6th Cir. 2010).

Whether the arbitration agreement was effectively terminated is an issue of contract interpretation, which was for the arbitrators, not the trial court or this court, to decide. *See Aston Solar*, 2022 WL 1256427, at *4 (interpretation of the parties' contract was a matter for the arbitrators). Because the contract gave the arbitrators the authority to decide any controversy arising under the contract, appellants have not established that the arbitrators did not have authority to decide the issue of termination of the agreement. We overrule appellants' third issue.

## V.     The arbitrators did not engage in misconduct by declining to postpone the arbitration hearing.

In appellants' fourth issue they assert the trial court erred in failing to vacate the arbitration award because the arbitrators failed to postpone the hearing after Choudhri's counsel withdrew.

On October 3, 2020, the arbitrators held a telephonic hearing at which counsel for Choudhri, the Dalio Entities, and Mokaram appeared. At the beginning of the hearing Choudhri was represented by three attorneys: Jeff Joyce, Bo Dawson, and Kate David. Joyce, who was substituting for Choudhri's previous attorney, sought a continuance on behalf of Choudhri because Choudhri was under a doctor's care and could not attend the arbitration. Following discussion of several procedural matters, the arbitrators adjourned. On November 19, 2020, the trial court signed an agreed order relating to the final hearing in the arbitration. The trial court's order stated that the arbitration would proceed to a preferential final hearing on February 8-12, 2021 unless rescheduled by further order of the panel. At that time Choudhri was represented by Joyce, Dawson, and David.

The final hearing began on February 8, 2021. Choudhri filed a motion to continue the hearing on the grounds that his counsel had withdrawn and his new counsel, Lloyd Kelley and Michele Fraga, needed additional time to prepare for the hearing. One month earlier, Choudhri's previous attorneys (Joyce, Dawson, and David) had filed motions to withdraw, which were granted by the panel. Mokaram's attorney responded, stating that since the last delay—in October 2020—attempts were made by appellants to prevent witnesses from testifying in addition to the additional expense incurred in continuing the arbitration, which was borne by Mokaram. After lengthy arguments from counsel the arbitrators denied Choudhri's motion for continuance. In an interim procedural order the arbitrators noted:

> All Parties were made aware on several previous occasions and Procedural Orders that no further continuances would be granted. Mr. Choudhri requested he receive a list of witnesses and order of presentation, procedural orders and exhibits. The Panel stated he could receive orders previously issued by the Panel [from the Dalio Entities' counsel] and [Mokaram's counsel] advised he would supply a copy of the new exhibits, witness list and opening statement notebook to Mr. Choudhri.

17

The final hearing proceeded on February 8, 2021.

The FAA allows courts to vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown . . . ." 9 U.S.C. § 10(a)(3); *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006). To establish a panel was "guilty of misconduct" pursuant to section 10(a)(3) in denying postponement of an arbitration hearing, the party seeking vacatur of the award must show there was no reasonable basis for the panel's refusal to postpone the hearing. *Laws*, 452 F.3d at 400; *SunGard Energy Sys., Inc. v. Gas Transmission Nw. Corp.*, 551 F.Supp.2d 608, 613 (S.D. Tex. 2008). In addition, the party seeking vacatur on such basis must establish it suffered prejudice as a result of the refusal to postpone. *See* 9 U.S.C. § 10(a)(3); *Laws*, 452 F.3d at 401; *SunGard*, 551 F.Supp.2d at 613. To establish prejudice, the party must "prove a 'continuance might have altered the outcome of the arbitration.'" *SunGard*, 551 F.Supp.2d at 613 (quoting *Laws*, 452 F.3d at 400); *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 400 (Tex. App.—Dallas 2009, pet. denied).

Even if appellants could have benefited from a continuance in this case, they have not shown misconduct on the part of the arbitrators. Appellants rely on the supreme court's opinion in *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986) to demonstrate the arbitrators' misconduct in failing to postpone the hearing. In *Villegas*, reviewing a trial court's denial of a motion for continuance due to absence of counsel, the court noted that the right to counsel is a valuable right and its unwarranted denial is reversible.[5] *Id*. In *Villegas,* a party appeared at trial without an attorney and requested time to obtain an attorney after the trial court allowed his

---

[5] The grounds a court would find sufficient to support a motion for continuance in a trial court are instructive when reviewing whether an arbitration panel engaged in misconduct in failing to postpone an arbitration hearing. *Hoggett v. Zimmerman, Axelrad, Meyer, Stern & Wise, P.C.*, 63 S.W.3d 807, 811 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

attorney to withdraw two days before trial. *Villegas*, 711 S.W.2d at 625. The *Villegas* court held that the trial court abused its discretion in denying Villegas's request for a continuance, because the evidence showed that (1) Villegas was not negligent or at fault for causing his attorney's withdrawal, (2) two days was too short a time to find a new attorney and for the new attorney to investigate the case, and (3) Villegas was prevented from obtaining a new attorney because his former attorney refused to turn over Villegas's file. *Id*. at 626–27. Accordingly, the court held that the trial court "should either have denied the attorney's motion to withdraw or granted the party's motion for continuance; it did neither." *Id*. at 627.

In contrast, in *State v. Crank*, 666 S.W.2d 91 (Tex. 1984), Dr. Crank had previously received two continuances when, on the morning of his administrative hearing before the board of dental examiners, he announced that he and his counsel had reached "philosophical differences" in their approach to his case, and he requested a continuance to substitute other attorneys. *Id*. at 93. Despite having notice of the scheduled hearing for over a month, it was not until the morning of the hearing that Dr. Crank informed the board that he would no longer be represented by his attorney of record and wanted more time to find other attorneys. *Id*. at 93–94. Based on those facts, the supreme court found no abuse of discretion in denying Dr. Crank's motion for continuance. *Id*. at 94.

We conclude the facts of this case are more akin to *Crank* than *Villegas*. As noted by the arbitration panel, Choudhri was given all the documents his new counsel requested, and he had been made aware that no further continuances would be granted. Choudhri's attorneys withdrew due to conflicts caused by Choudhri's failure to comply with counsel's engagement agreement. The record supports a reasonable basis for denying the postponement, i.e., Choudhri's attorneys had requested withdrawal at least one month before the hearing was set, Choudhri was

19

aware of their request, and the record reflects he did not object to it.

In alleging harm from the arbitrators' denial of Choudhri's motion for postponement, appellants assert they were harmed because "counsel for Mokaram failed to comply with the panel's March 29, 2020 scheduling order, including, but not limited to, Mokaram's failure to timely designate experts or quantify damages." Appellants make no argument as to how the arbitrators' denial of their motion for continuance was related to Mokaram's failure to timely designate experts or quantify damages almost a year earlier. Even if appellants could demonstrate that the arbitrators engaged in misconduct, they failed to show harm by failing to establish how the failure to grant a postponement might have altered the outcome of the arbitration. *See Laws*, 452 F.3d at 400. We overrule appellants' fourth issue.

## VI.    Appellants did not establish that Arbitrator Zimmerman was biased.

In appellants' fifth issue they challenge the trial court's failure to vacate the arbitration award on the grounds that the arbitrators committed material errors of law. Specifically, appellants challenge the arbitrators' award on the merits of the Mokaram's claims of wrongful foreclosure, conspiracy, and breach of fiduciary duty. Appellants further challenge the arbitrators' award on the merits of Nemeti's claims of breach of fiduciary duty and breach of contract. Appellants also challenge the portion of the arbitrators' award that found Mokaram could bring a derivative action on behalf of Texas REIT. Appellants also challenge the arbitrators' decision to permit Mokaram and Nemeti to assign their interests in Texas REIT after appellants pay the damage award.

Appellants' "material errors of law" do not constitute grounds for vacatur under the FAA. As stated above, the parties' agreement provided that the FAA governed the arbitration proceedings in this matter. The grounds on which a trial court may vacate an arbitration award under the FAA are limited to those expressly

identified in section 10 of the FAA, to the exclusion of all other potential grounds, including allegations of reversible error. *Hall St. Assocs.*, 552 U.S. at 584. A mere mistake of law by an arbitrator cannot serve as the basis for judicial review. *Prudential-Bache Sec., Inc. v. Tanner*, 72 F.3d 234, 239 (1st Cir. 1995).

Under the heading of "[m]iscellaneous errors of law," appellants assert that arbitrator Alvin Zimmerman was biased due to an undisclosed relationship with an attorney who represented one of the witnesses in another proceeding in 2008. The only "material error of law" listed in appellants' fifth issue that can be reviewed under the FAA is the alleged bias of one of the arbitrators. *See* 9 U.S.C.A. § 10(a)(2) (addressing evident partiality or corruption in the arbitrators); *see also Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016) ("Section 10 provides the exclusive grounds for vacatur of an arbitration award.").

On April 13, 2020, Choudhri filed an objection to arbitrator Alvin Zimmerman. Choudhri alleged that Zimmerman had been either employed by, or partnered with, an attorney named Rodney Drinnon from 2004 through 2008. Drinnon represented Osama Abdullatif in ongoing litigation in another court in Harris County. Abdullatif was a witness during the arbitration proceedings and, according to Choudhri, was Mokaram's business partner. Choudhri alleged that this connection resulted in the appearance of impropriety and asserted that Zimmerman may be biased in the arbitration. The parties have not cited any ruling on this objection, nor has our review of the record reflected a ruling.

On appeal, without citation to authority, appellants contend the panel was prejudiced by Zimmerman's alleged bias, and such bias "irreparably harmed the fairness of the proceedings." Under the FAA, courts may vacate an arbitration award where there was evident partiality or corruption in the arbitrators. *Cooper*, 832 F.3d at 545. Evident partiality conveys "a stern standard." *Positive Software Sols., Inc. v.*

21

*New Century Mortg. Corp.*, 476 F.3d 278, 281 (5th Cir. 2007) (en banc). The statutory language requires a court to uphold an arbitral award unless bias was clearly evident in the decisionmakers. *Id.* Thus, for the arbitration award to be vacated, appellants "must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to" Mokaram. *See Householder Grp. v. Caughran*, 354 Fed.Appx. 848, 852 (5th Cir. 2009). The "alleged partiality [must be] direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *Id.* (quoting *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F.Supp.2d 545, 550 (N.D. Tex. 2006)).

Appellants fail to allege specific facts sufficient to demonstrate a direct, definite partiality. The only facts alleged to support bias are that Zimmerman partnered with an attorney who represented a witness to the arbitration more than a decade before the arbitrators made their decision. We are left with nothing more than appellants' speculative assertion in their brief that this tenuous relationship resulted in bias. Appellants failed to demonstrate a significant connection to the parties to establish that vacatur is warranted under section 10(a)(2). *See OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449, 453 (5th Cir. 2020) (arbitrator's prior relationship with a non-party was not a "significant compromising connection to the parties" to justify vacatur of award). We overrule appellants' fifth issue.

## CONCLUSION

Having overruled appellant's issues on appeal we affirm the trial court's judgment confirming the arbitration award.


/s/    Jerry Zimmerer
        Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.

22